Jeremy MOLINET, Petitioner,

v.

Patrick KIMBRELL, M.D. and John Horan, M.D., Respondents.

No. 09–0544.

Supreme Court of Texas.

Argued Oct. 13, 2010.

Decided Jan. 21, 2011.

Michelle Mei–Hsue Cheng, Bill Whitehurst, Eugene W. Brees II, Whitehurst Harkness Brees Cheng & Imhoff, PC., Austin, TX, Jon Todd Powell, The Powell Law Firm, Brant Steven Mittler, Attorney at Law, San Antonio, TX, for Jeremy Molinet.

Rosemary L. Hollan, Hollan Law Firm, P.C., San Antonio, TX, Diana L. Faust, R. Brent Cooper, Devon J. Signh, Cooper & Scully, P.C., Dallas, TX, for Patrick Kimbrell, M.D.

Carl Dawson, Ryan & Dawson, Houston, TX, David M. Adkisson, Begum & Tijerina, L.L.C., San Antonio, TX, for other interested party Marque Allen D.P.M.

Richard John Kasson, Gonzales, Chiscano, Angulo & Kasson, PC, San Antonio, TX, for other interested party Sports Medicine Associates of San Antonio.

Diana L. Faust, Cooper & Scully, P.C., Dallas, TX, Brett B. Rowe, Evans & Rowe, P.C., San Antonio, San Antonio, TX, for John Horan, M.D.

D. Michael Wallach, Wallach & Andrews P.C., Fort Worth TX, for Amicus Curiae Texas Alliance for Patient Access.

Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio TX, for Amicus Curiae Biomet, Inc., EBI Medical Systems, L.P., EBI Medical Systems, Inc., LVB.

Justice JOHNSON delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice WILLETT, and Justice GUZMAN joined.

In this case we consider a statutory conflict regarding whether limitations bars Jeremy Molinet's health care liability claims against two doctors he sued after they had been designated as responsible third parties pursuant to Texas Civil Practice and Remedies Code section 33.004. *See* TEX. CIV. PRAC. & REM.CODE § 33.004.[1] Molinet joined the doctors as defendants within sixty days after they were designated as responsible third parties but more than two years after they last treated him. Section 33.004(e) provides that if a defendant designates a responsible third party the claimant may, within sixty days, join the designated party "even though such joinder would otherwise be barred by limitations." *Id.* However, section 74.251(a) provides a two-year limitations period for health care liability claims that applies "[n]otwithstanding any other law," and section 74.002(a) provides that chapter 74 controls in the event its provisions conflict with other law. *See id.* §§ 74.251(a), 74.002(a).

We hold that section 74.251(a) prevails and Molinet's claims against the doctors are barred by its two-year limitations period.

## I. Background

On July 15, 2004, Jeremy Molinet injured his Achilles tendon. On July 18, 2004, Dr. John Horan surgically repaired the tendon, after which Molinet re-injured it. Dr. Marque Allen performed a second operation later that year. Dr. Patrick Kimbrell, a wound treatment specialist, treated Molinet for several weeks beginning in early November 2004.

In September 2005, Molinet filed suit against several parties seeking damages related to his injury and medical treatment. He sued Dr. Allen and various health care providers, but did not sue either Dr. Horan or Dr. Kimbrell. In both May and September 2006, Molinet amended his pleadings and added additional healthcare providers as defendants but still did not sue Dr. Horan or Dr. Kimbrell. On August 1, 2007, more than two-and-a-half years after either Dr. Horan or Dr. Kimbrell last treated Molinet, Dr. Allen moved to designate them as responsible third parties pursuant to section 33.004(a). The trial court granted Dr. Allen's motion on August 21, 2007. On August 24, 2007, Molinet amended his pleadings to join Drs. Horan and Kimbrell as defendants. *See id.* § 33.004(e). The doctors moved for summary judgment on the basis that Molinet's claims against them were barred by the two-year statute of limitations in section 74.251(a).

The trial court denied the motion for summary judgment. Pursuant to agreement of the parties, the court authorized an interlocutory appeal. *See id.* § 51.014(d) (permitting a trial court to issue a written order for interlocutory appeal in a civil action if the parties agree to the order and agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation).

The court of appeals reversed the trial court's order and rendered judgment dis-

---

1. Further references to provisions of the Civil Practices and Remedies Code will generally be by reference to section and number.

missing Molinet's claims against Drs. Horan and Kimbrell. 288 S.W.3d 464, 468. The court of appeals held that section 74.251(a) contains an absolute two-year limitations period and trumps the contradictory language in section 33.004(e). *Id.* at 467–68.

In this Court, Molinet argues that sections 74.251(a) and 33.004(e) do not truly conflict and both can be given effect. Alternatively, he argues that even if the statutes conflict, the language of section 33.004(e) controls and provides an exception to the two-year limitations period in section 74.251(a).

Drs. Horan and Kimbrell contest our jurisdiction to review the court of appeals' judgment because this is an interlocutory appeal. Alternatively, they urge that the court of appeals correctly resolved the issue.

We conclude that we have jurisdiction to clarify the issue and that section 74.251(a) controls. Thus, we affirm the court of appeals' judgment.

## II. Jurisdiction

■ This Court has jurisdiction over interlocutory appeals if the justices of the court of appeals disagree on a material question of law or if the court of appeals' decision conflicts with a prior decision of this Court or another court of appeals. Tex. Gov't Code § 22.225(c); *In re H.V.*, 252 S.W.3d 319, 324 (Tex.2008). Decisions conflict "when there is inconsistency in the[ ] respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." Tex. Gov't Code § 22.225(e).

In *Moreno v. Palomino–Hernandez*, 269 S.W.3d 236 (Tex.App.-El Paso 2008, pet. denied), the El Paso Court of Appeals considered a health care liability suit in which Dr. Palomino–Hernandez was desig-

nated as a responsible third party and then named as a defendant by the plaintiffs. The underlying facts of the case are not entirely clear in the opinion, but Dr. Palomino–Hernandez had been named as a defendant and served with an expert report in a case filed in August 2003. *Id.* at 237–38. The plaintiffs nonsuited that case and in April 2005, filed the suit out of which the appeal arose, apparently based on the same injuries as the 2003 suit. *Id.* at 238. They did not name Dr. Palomino–Hernandez as a defendant. *Id.* The trial court entered a scheduling order in January 2006 that stated the deadline for joining additional parties had passed. On January 30, 2006, a defendant filed a motion for leave to designate Dr. Palomino–Hernandez as a responsible third party, and the trial court granted the motion on February 22. *Id.* On March 21, the plaintiff filed an amended petition naming Dr. Palamino–Hernandez as a defendant. *Id.* Dr. Palamino–Hernandez filed a motion to dismiss, urging that the plaintiffs neither timely joined him nor timely served an expert report. *Id.* The trial court granted the motion to dismiss. *Id.*

The court of appeals held that an expert report had been timely served. *Id.* at 242. It also held that the trial court abused its discretion by allowing the defendant to designate a responsible third party and yet refusing to allow the plaintiffs' timely joinder of that party pursuant to section 33.004(e). *Id.* at 243. Although the court of appeals did not directly address the relationship between section 33.004(e) and section 74.251(a), it indicated that section 33.004(e) effectively provided an unqualified sixty-day period for joinder of a responsible third party beginning with the date the third party was designated. *See id.* at 243 & n. 6.

The ostensible effect of *Moreno* and the court of appeals' decision in this case are

not in accord regarding whether section 33.004(e) effectively establishes a new sixty-day window in which a plaintiff can sue a defendant even if the limitations period in section 74.251(a) has run. We have jurisdiction to clarify the issue "to remove unnecessary uncertainty in the law." Tex. Gov't Code § 22.225(e). We need not address Molinet's argument that the concurrence in the court of appeals was sufficient to give this Court jurisdiction.

### III. Analysis

#### A. Standard of Review

■ We review issues of statutory construction de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003). Our primary objective in construing statutes is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008).

#### B. The Statutory Provisions

■ Section 33.004(e) states:

If a person is designated under this section as a responsible third party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join that person not later than 60 days after that person is designated as a responsible third party.

Tex. Civ. Prac. & Rem.Code § 33.004(e). However, section 74.251 provides:

(a) Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

(b) A claimant must bring a health care liability claim not later than 10 years after the date of the act or omission that gives rise to the claim. This subsection is intended as a statute of repose so that all claims must be brought within 10 years or they are time barred.

*Id.* § 74.251. Additionally, section 74.002(a) contains a general conflict-of-law provision that states "[i]n the event of a conflict between [chapter 74] and another law, including a rule of procedure or evidence or court rule, [chapter 74] controls to the extent of the conflict." *Id.* § 74.002(a).

Molinet first argues that sections 74.251(a) and 33.004(e) do not conflict. He urges that section 33.004(e) does not change the statute of limitations by either altering when the limitations period begins to run or by tolling it for a certain period of time. Rather, he posits, section 33.004(e) simply provides that the statute of limitations is not applicable to the joinder of a party when that party has been designated as a responsible third party.

In support of this argument, Molinet cites *Chilkewitz v. Hyson*, 22 S.W.3d 825 (Tex.1999). In *Chilkewitz*, the plaintiff named "Morton Hyson, M.D." as a defendant in a health care suit within the limitations period. *Id.* at 827. After the limitations period had run, Hyson filed a motion for summary judgment alleging that he did not perform the surgery individually, but that it was performed by his professional association, "Morton Hyson, M.D., P.A." *Id.* Hyson then argued that the "notwithstanding any other law" language in former Texas Revised Civil Statutes article

4590i, section 10.01,[2] the predecessor to section 74.251, precluded the operation of Texas Rule of Civil Procedure 28, which provides that "any ... individual doing business under an assumed name may sue or be sued in its ... assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted." *Id.* at 828; *see* TEX.R. CIV. P. 28. We disagreed and held that rule 28 did not conflict with section 10.01 because it was not a tolling provision that operated to extend the limitations period. *Chilkewitz,* 22 S.W.3d at 830.

In reaching our decision we recognized that several cases had interpreted section 10.01 and held that the "notwithstanding any other law" language prevented the tolling of the statute of limitations in medical malpractice cases. *Id.* at 829–30. But as Molinet points out, we also held that rule 28 was not a tolling provision that extended limitations. *Id.* at 830. We stated:

> But in all the foregoing cases, the issue was either when limitations began to run or whether limitations could be tolled or interrupted. Rule 28 concerns none of those issues. That procedural rule simply provides that if an entity conducts business under an assumed or common name, it may be sued in that name. Limitations is not tolled.

*Id.*

Although his argument is not entirely clear, Molinet asserts that, like rule 28, section 33.004(e) is not a tolling provision; instead, it allows a plaintiff to join a party who has already been properly implicated in the pending lawsuit. Thus, Molinet essentially argues that the statute of limita-

tions is only applicable when an action is "commenced" in the traditional sense, and that *Chilkewitz* held that when a party is subsequently joined in a pending proceeding the statute of limitations does not apply. We disagree.

Rule 28 is predicated on the notion that a case has already commenced against the proper party, but the party's legal name is incorrect. *See* TEX.R. CIV. P. 28 (allowing that "the true name may be substituted"); *see also Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 53 (Tex.2003) ("Rule 28 requires that the correct legal name be substituted...."). Thus, in *Chilkewitz* the doctor's professional association was effectively already a party to the suit even though Chilkewitz only named the doctor as an individual. *See Chilkewitz,* 22 S.W.3d at 829 ("[A]lthough Chilkewitz described Hyson as an individual in his original petition, his suit against Morton Hyson, M.D. was effective to commence suit against the Association doing business under the name of Morton Hyson, M.D.").

In contrast, the effect of chapter 33 is not to statutorily determine when a suit is commenced against parties designated as responsible third parties. The filing and granting of a motion for leave to designate a person as a responsible third party does not artificially establish the "commencement" of the case against a party as of some date before the party was in fact joined. *See* TEX. CIV. PRAC. & REM.CODE § 33.004(i).

In short, the plaintiff in *Chilkewitz* was allowed to amend his pleadings to reflect the defendant's proper legal name, but that defendant was a party to the lawsuit before limitations expired. Here, we are dealing with whether section 33.004(e) al-

---

**2.** Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 10.01, 1977 Tex. Gen. Laws 2052, 2058, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884.

lows the plaintiff to commence an action outside the two year limitations period against two entirely new defendants.

We disagree with Molinet's argument that the statutes are not in conflict as to the issue presented. The limitations provision of section 74.251(a) would bar Molinet's action against Drs. Horan and Kimbrell, while section 33.004(e) would prevent that limitations provision from barring it.

### C. Construing the Statutes

We recently considered a similar situation in *Texas Lottery Commission v. First State Bank of DeQueen,* 325 S.W.3d 628 (Tex.2010). In that case, both the Uniform Commercial Code and the Texas Lottery Act addressed assignability of future lottery payments, which the UCC designated as "accounts." *Id.* at 631. We held that because the UCC contained a conflict-of-law provision specifying that a conflicting statute is "ineffective to the extent that the ... statute ... prohibits [or] restricts" the assignment of an account, the Legislature intended for the UCC to control the assignments in question. *Id.* at 638.

Similarly, chapter 74's language reflects legislative intent for section 74.251(a) to be the controlling statute as to claims such as Molinet's against Drs. Horan and Kimbrell. First, section 74.251(a) explicitly states that "notwithstanding any other law" a health care liability claim must be commenced within two years after "the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." TEX. CIV. PRAC. & REM.CODE § 74.251(a). Second, section 74.002(a) provides "in the event of a conflict between [chapter 74] and another law, including a rule of procedure or evidence or court rule, [chapter 74] controls to the extent of the conflict." *Id.* § 74.002(a).

In *Chilkewitz,* we held that section 74.251(a)'s predecessor statute foreclosed operation of any statute "that would otherwise extend limitations." *Chilkewitz,* 22 S.W.3d at 829–30. As the court of appeals correctly held, adopting Molinet's position would extend the limitations period as to his claims against Drs. Horan and Kimbrell. 288 S.W.3d 464, 468. Thus, by the specific provisions stating that section 74.251(a) applies "notwithstanding any other law," and that chapter 74 prevails over conflicting law, the Legislature has resolved the otherwise-conflicting provisions of sections 74.251(a) and 33.004(e). *See Tex. Lottery Comm'n,* 325 S.W.3d at 639.

The dissent argues that our analysis in *Lottery Commission* is not applicable here because in that case "strong policy considerations" dictated that the use of canons of construction was inappropriate. 356 S.W.3d at 420. Despite making this argument, the dissent specifically notes that in *Lottery Commission* we did not even discuss the policy provision that the dissent references. *Id.*

Policy considerations involving the UCC were not the basis of our holding in *Lottery Commission.* In *Lottery Commission,* we discussed in depth the language of the UCC provision in dispute and concluded that canons of construction were not necessary because the express provision was unambiguous. *See Tex. Lottery Comm'n,* 325 S.W.3d at 637–39 ("We agree with FSB that because the Legislature expressly and unambiguously set out the method for resolving conflicts between the UCC and other statutes, it would be improper to go outside the language of the statute and use canons of construction to resolve the question."). We looked only to the plain language of the UCC's conflict-of-law provision, which expressly stated a conflicting statute may not prohibit or restrict the assignment of an account, and

held that the Legislature intended for the UCC to control the assignments in question. *Id.* at 639. Here, section 74.251(a) and section 74.002(a) contain express, unambiguous conflicts-of-law provisions. Applying the same analysis as we did in *Lottery Commission,* we conclude that section 74.251(a) should apply "notwithstanding any other law."

We also disagree with the court of appeals' statement that section 74.002(a) is not instructive on the issue presented as to Molinet's claims against Drs. Horan and Kimbrell because the provision was neutralized by chapter 33's own conflict-of-law provision. 288 S.W.3d at 467.

Section 33.017 states:

Nothing in this chapter shall be construed to affect any rights of indemnity granted by any statute, by contract, or common law. To the extent of any conflict between this chapter and any right to indemnification granted by statute, contract, or common law, those rights of indemnification shall prevail over the provisions of this chapter.

Section 33.017 is not applicable in this situation for two reasons. First, while it preserves indemnity rights, it does not provide that chapter 33 generally controls over conflicting laws. Second, even if section 33.017 were a general conflict-of-law provision, this case does not concern the rights of indemnified parties.

Thus, both section 74.002(a) and section 74.251(a) evidence clear legislative intent that the two year statute of limitations in section 74.251(a) applies to Molinet's claims against Drs. Horan and Kimbrell notwithstanding section 33.004(e).

### D. Legislative History

In support of their arguments that section 33.004(e) controls over section 74.251(a), Molinet and the dissent urge us to consider and give overriding weight to statements made by a senator during floor debates and published by unanimous consent in the Senate Journal. We decline to do so. Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute. *See Gen. Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex.1993). Moreover, the Legislature expresses its intent by the words it enacts and declares to be the law. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex.2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on."). Construing clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law—ensures that ordinary citizens are able to rely on the language of a statute to mean what it says. *See Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 866 (Tex. 1999). When a statute's language is clear and unambiguous " 'it is inappropriate to resort to the rules of construction or extrinsic aids to construe the language.' " *Tex. Lottery Comm'n,* 325 S.W.3d at 637 (quoting *City of Rockwall,* 246 S.W.3d at 626); *Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex.2004); *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997).

It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsen-

sical results. *See* Tex. Gov't Code § 311.011(a) (words and phrases shall be read in context and construed according to rules of grammar and common usage); *Tex. Lottery Comm'n,* 325 S.W.3d at 637–38. And our interpretation of the language the Legislature used in section 74.251(a) is neither contradicted by its context nor does it create an absurd or nonsensical result.

Molinet could have avoided the limitations difficulty in which he finds himself by taking action such as seeking a scheduling order requiring responsible third parties to be designated in time to allow their joinder as parties before limitations expired. If that failed, he could have added the doctors as defendants within the limitations period, just as he timely named several other healthcare providers as defendants. He did not do so, however, and it is not absurd or nonsensical for him to bear the consequences of his decisions.

### E. Is an Exception to Section 74.251(a) Appropriate?

Molinet argues that even if section 74.251(a) controls we should create an exception to the two-year limitations period under the circumstances addressed by section 33.004(e). He bases his argument on the proposition that we have previously recognized exceptions to the limitations period in section 74.251(a), although he does not argue that any of the exceptions are applicable here. He references *Morrison v. Chan,* where we held that there was no violation of the open courts provision of the Texas Constitution by former section 10.01's abolishing of the discovery rule in cases governed by chapter 74. 699 S.W.2d 205, 207–08 (Tex.1985). Molinet also refers to cases involving fraudulent concealment and notes the Court has said that fraudulent concealment in health care liability claims estops a health-care provider

from relying on limitations to bar a plaintiff's claim. *Shah v. Moss,* 67 S.W.3d 836, 841 (Tex.2001); *see also Borderlon v. Peck,* 661 S.W.2d 907, 908–09 (Tex.1983).

Thus, he notes, we have recognized exceptions to section 74.251's two-year statute of limitations in limited circumstances even though several of our decisions have characterized the two-year statute of limitations as "absolute." *See Diaz v. Westphal,* 941 S.W.2d 96, 99 (Tex.1997) ("We have repeatedly held that section 10.01 [74.251's predecessor] establishes an absolute two-year statute of limitation for health care liability claims...."); *Bala v. Maxwell,* 909 S.W.2d 889, 892–93 (Tex. 1995) (holding that section 10.01 controls over the limitations provision of the wrongful death statute); *see also In re USAA,* 307 S.W.3d 299, 310–11 (Tex.2010) (suggesting that section 74.251(a) controls over the tolling provision in section 16.064 of the Civil Practice and Remedies Code in health care liability claims).

Molinet argues that our cases applying former section 10.01 are not instructive to the application of 74.251(a). But the language in section 74.251(a) is almost identical to the language in section 10.01. Section 10.01 provided: "Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed...." We disagree with Molinet; our interpretation of the language in section 10.01 is instructive regarding our application of section 74.251(a). And our cases construing both 74.251(a) and its predecessor have characterized the two-year statute of limitations as absolute absent very narrow exceptions. But none of the recognized exceptions apply in this

case, and to create an exception here would require us to give effect to section 33.04(e) and construe the plain provisions of sections 74.251(a) and 74.002(a) to mean something other than what they clearly say. We will not do so.

The dissent also argues that the Legislature's enactment of section 74.251(b), creating a ten year statute of repose, evidences intent to allow an exception for 33.004(e) to the two-year limitations period in section 74.251(a). 356 S.W.3d at 416. We disagree.

Before the Legislature enacted the statute of repose in 2003,[3] we had recognized fraudulent concealment and open courts provision exceptions to the two-year statute of limitations. *See Shah,* 67 S.W.3d at 841; *Morrison,* 699 S.W.2d at 208; *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985); *Borderlon,* 661 S.W.2d at 908–09. Neither the language nor the context of section 74.251(b) implies legislative intent for section 33.004(e) to be an exception to the express, clear language in sections 74.251(a) and 74.002(a). We recently noted in *Walters v. Cleveland Regional Medical Center* that "a ten-year repose period has no purpose unless the two-year limitations period has exceptions." 307 S.W.3d 292, 298 (Tex.2010). But in *Walters* we were discussing the interaction of section 74.251(a), section 74.251(b), and provisions of the Texas Constitution. This case pits chapter 74 against chapter 33, not the Texas Constitution. And the Legislature has declared that when another statutory provision conflicts with chapter 74, chapter 74 controls. The dissent concludes that section 74.251(b) reflects legislative intent to negate two clear conflict-of-law provisions in chapter 74; we conclude that the Legislature meant what it clearly said in sections 74.251(a) and 74.002(a).

 We are mindful of concerns expressed by the dissent and Molinet that not permitting a plaintiff to join designated responsible third parties outside the limitations period may create an imbalance in the proportionate responsibility framework. But to the extent it does so, that balancing—or imbalancing—has been accomplished by the Legislature. The statute of limitations in health care liability claims "reflect[s] a considered legislative judgment in favor of the prompt resolution of such claims." *Yancy v. United Surgical Partners Int'l,* 236 S.W.3d 778, 784 (Tex. 2007). Imbalances the statutes allegedly create are matters to be addressed by the Legislature.

## IV. Conclusion

The court of appeals correctly concluded that section 74.251(a) bars Molinet's suit against Drs. Horan and Kimbrell. Accordingly, we affirm the court of appeals' judgment.

Justice LEHRMANN filed a dissenting opinion, in which Justice MEDINA joined.

Justice LEHRMANN, joined by Justice MEDINA, dissenting.

As the Court acknowledges, we have repeatedly recognized that certain constitutional restrictions and common law doctrines may override the two-year limitations period established by section 74.251(a) of the Civil Practice and Remedies Code and its statutory predecessors. *See, e.g., Walters v. Cleveland Reg'l Med. Ctr.,* 307 S.W.3d 292, 298 (Tex.2010); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex. 1985); *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983). Nevertheless, the Court concludes that the deadline is "absolute,"

---

**3.** Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 864, 864–82 (current version at TEX CIV PRAC. & REM.CODE § 74.251(b)).

trumping the statutory override the Legislature established in section 33.004(e) of the Texas Civil Practice & Remedies Code. 356 S.W.3d at 415. The same legislative Act that implemented the current version of section 33.004(e) also enacted a ten-year statute of repose which "contemplates it is at least possible for certain [health care liability] claims to be brought up to eight years after limitations expires." *Walters,* 307 S.W.3d at 298; *see* TEX. CIV. PRAC. & REM.CODE § 74.251(b). In my view, the Legislature's simultaneous adoption of a provision allowing for the post-limitations initiation of health care liability claims and a provision allowing joinder of responsible third parties against whom limitations has run, at a minimum, clouds the purportedly unambiguous, "[n]otwithstanding any other law" language of section 74.251(a) the Court relies on. And, with several specified exceptions not relevant here, chapter 33 applies to "*any cause of action* based on tort." TEX. CIV. PRAC. & REM.CODE § 33.002(a)(1) (emphasis added). Viewing the Act as a whole and absent any other expression of legislative intent to exclude health care liability claims from section 33.004(e)'s purview, I respectfully dissent.

Before the 2003 amendments to chapter 33 of the Civil Practice and Remedies Code, adopted as part of the sweeping tort reform implemented by House Bill 4,[1] defendants in tort suits, including health care liability defendants, were permitted to attempt to shift liability to responsible third parties by joining them as third-party defendants. Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972–73, amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02–4.04, 2003 Tex. Gen. Laws 847, 855–56; *see* Gregory J. Lensing, *Proportionate Responsibility and Contribution Before and After the Tort Reform of 2003,* 35 TEX.

TECH L.REV. 1125, 1186 (2004). Like the present version of chapter 33, a claimant was permitted to assert a claim against a responsible third party a defendant had joined under chapter 33 within sixty days of the party's joinder, even if limitations had expired. Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 973, amended by Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 4.04, 2003 Tex. Gen. Laws 847, 855–56. A responsible third party could be joined only if the party (1) was or might have been liable to the claimant for all or part of the claimant's damages; (2) was subject to the court's jurisdiction; and (3) could have been sued by the claimant, but was not. Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, amended by Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 4.04, 2003 Tex. Gen. Laws 847, 855–56.

The 2003 amendments to chapter 33, however, dramatically altered this third-party practice. Under the current version of the statute, the trier of fact may allocate a percentage of responsibility to a third party designated by a defendant, even if the party has not been made a party to the lawsuit. TEX. CIV. PRAC. & REM.CODE §§ 33.003, 33.004. A jury's allocation of responsibility to a designated third party has no legal impact upon the designee: adverse findings impose no liability, and "may not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory. . . ." TEX. CIV. PRAC. & REM.CODE § 33.004(i)(2). But the defendant has "much to gain strategically by designating a responsible third party because the defendant has a possibility of shifting a large percentage of responsibility onto the responsible third party, thereby avoiding

---

1. Act of June 2, 2003, 78th Leg., R.S., ch. 204,

§ 4.03, 2003 Tex. Gen. Laws 847, 855–56.

joint and several liability," Jas Brar, *Friend or Foe? Responsible Third Parties and Leading Questions*, 60 BAYLOR L.REV. 261, 275 (2008), or possibly evading any liability at all. *See* Elaine A. Carlson, *Tort Reform: Redefining the Role of the Court and the Jury*, 47 S. TEX. L.REV. 245, 259 (2005) (hereinafter Carlson); TEX. CIV. PRAC. & REM CODE § 33.001. As the concurring justice in the court of appeals in this case observed, the designee has no legal incentive to vigorously contest liability or attempt to assign responsibility to the defendant. 288 S.W.3d 464, 470 (SIMMONS, J., concurring); *see also* Carlson at 261. Read in light of proper canons of construction, the relevant provisions do not dictate the imbalanced scheme stemming from the Court's decision.

In construing a statute, our ultimate goal is to determine the meaning the Legislature intended. *Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 901 (Tex.2010). We begin with the statute's text, and " 'examine the *entire act* to glean its meaning.' " *Id.* (quoting *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001)) (emphasis added). We also presume that the Legislature intended a just and reasonable result. *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex.2010); *see* TEX. GOV'T CODE § 311.021(3).

The Court grounds its decision on the assumption that the language of section 74.251(a), providing for a two-year limitations period "[n]otwithstanding any other law," is clear and unambiguous, and mandates the application of the limitations period to Molinet's claims against Kimbrell. But section 33.002 of the Code unambiguously provides that chapter 33 applies to "any cause of action based on tort" and Deceptive Trade Practices Act claims, and specifies the claims to which it does not apply. TEX. CIV. PRAC. & REM.CODE § 33.002. More importantly, the Court reads section 74.251(a)'s language in isolation. House Bill 4, the source of both sections 74.251(a) and 33.004(e), also enacted section 74.251(b), a provision that clearly allows some health care liability claims to be brought after limitations has run.[2] *Walters*, 307 S.W.3d at 298. While the Legislature could have conceivably enacted subsection (b) to give effect to previously recognized common law or constitutionally mandated exceptions to limitations, as the Court posits, no language in House Bill 4 supports that assumption. On the other hand, section 33.004(e) was a portion of the very bill enacting the ten-year repose statute; thus, the Legislature's own words undermine the Court's conclusion that section 74.251(a) imposes an absolute deadline. *See Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex.2008) (construing statutes "passed at the same time as part of the same tort-reform bill [House Bill 4]" in harmony).

This Court has been reluctant to look to legislative history to divine the Legislature's meaning, and rightly so when the statute's words clearly convey legislative intent. *See In re Collins*, 286 S.W.3d 911, 918 (Tex.2009) (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n. 4 (Tex.2006)). In this instance, however, the Legislature's simultaneous adoption of a ten-year repose period for medical liability claims and its amendments to chapter 33 create an ambiguity that justifies consideration of legislative

---

2. That section provides:

(b) A claimant must bring a health care liability claim not later than 10 years after the date of the act or omission that gives rise to the claim. This subsection is intended as a statute of repose so that all claims must be brought within 10 years or they are time barred. TEX. CIV. PRAC. & REM.CODE § 74.251(b).

history bearing on the specific issue before us. *See HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 356 (Tex.2009) (looking to legislative history to determine meaning of term that lent itself to two equally plausible interpretations); *see also Robinson v. Crown Cork & Seal Co.,* 335 S.W.3d 126, 149 (Tex.2010) (looking to legislative record to determine public interest Legislature sought to serve in enacting Chapter 149 of the Civil Practice and Remedies Code).

In the Senate proceedings to consider the Conference Committee Report on House Bill 4, the following exchange between Senator Hinojosa and Senator Ratliff, House Bill 4's sponsor and a member of the conference committee that crafted the substitute that was ultimately enacted, is recorded in the Senate Journal:

> Senator Hinojosa: When a defendant names a responsible third party, as I understand it, the plaintiff has 60 days to bring the third party into the suit, even if limitations would otherwise have run against that person.... Is that true in a medical malpractice claim too, because on page 63 of the bill it seems to say that the two-year statute in those cases applies notwithstanding any other law?
>
> Senator Ratliff: Yes, if health care providers are going to have the benefit of the designation of responsible third parties, then they have to abide by the same rules as everyone else. This 60–day provision would apply in health care liability claims.

78th Leg., R.S., Journal of the Texas Senate 5005 (citations omitted). That exchange, which addresses the precise issue before the Court, was "ordered reduced to writing and printed in the Senate Journal" by unanimous consent "to establish legislative intent regarding HB4." *Id.* at 5003.

According to the Court, its reading of the statute does not create an absurd or nonsensical result, and if it does, it is the Legislature's doing. 356 S.W.3d at 411. But the Legislature crafted a scheme that permits defendants to attempt to minimize their liability by designating other responsible parties, while allowing plaintiffs to join the designees even if limitations have run. Under the Court's reading of the statute, which ignores the impact of section 74.251(b), health care liability defendants will be in a position to force plaintiffs to "prove the liability of the party defendant (or defendants), while at the same time defending the empty chair." Wes Christian & Alexandra Mutchler, *Musical Chairs: Apportioning Liability,* 44 THE ADVOC. 118, 123 (2008). The distortion inherent in such a procedure has been noted:

> "A plaintiff ... has no knowledge, possession, or control of evidence that a [responsible third party] could use to protect himself from a finger-pointing defendant. The empty chair defense, therefore ... places an impossible burden upon plaintiffs to represent [the responsible third party's] interests as well as their own, while giving defendants a great advantage in diminishing their own liability by allowing them to allocate fault to [the responsible third party]. The result would likely be an inaccurate diminution of fault allocated to defendants and an increase of fault attributed to unrepresented [responsible third party]."

*Id.* at 124 (quoting Nancy A. Costello, *Allocating Fault to the Empty Chair: Tort Reform or Deform,* 76 U. DET. MERCY L.REV. 571, 597 (1999)). According to the sponsor of House Bill 4, Representative Joe Nixon, the bill's purpose was " 'to establish an equitable and efficient system of justice in Texas that provides meaningful remedies for those who have been wronged while protecting the rights of those who have done no wrong.' " Carlson

at 248–249 (quoting Press Release, House Chairman Joe Nixon Files Legislation to Curb Medical Lawsuit Abuse (Feb. 12, 2003) (http://www.house.state.tx.us/news/release.php?id=91 (web page no longer available)); *see also Leland v. Brandal,* 257 S.W.3d at 208 (noting that the reforms applicable to health care liability claims House Bill 4 effected were intended to be implemented "in a manner that will not unduly restrict a claimant's rights") (citing Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(3), 2003 Tex. Gen. Laws 847, 884)). The Court's decision today disrupts the balance the Legislature sought to implement in section 33.004(e).

Moreover, contrary to the fundamental purposes of the reforms implemented in House Bill 4, the Court's reading of the statute will have the unintended consequence of encouraging lawsuits against health care providers. In the wake of today's decision, cautious health care liability claimants will be motivated to sue every health care provider involved in the patient's care, no matter how minimal their involvement, in order to circumvent an empty-chair defense by more likely responsible defendants.

Finally, the posture of this case differs significantly from *Texas Lottery Commission v. First State Bank of DeQueen,* 325 S.W.3d 628 (Tex.2010). In that case, we were called upon to resolve an apparent conflict between provisions of the Lottery Commission Act and the Uniform Commercial Code. We gave effect to the UCC provision, declining to resort to canons of construction that might have eliminated the conflict, instead applying a section of the UCC providing "that 'a rule of law, statute, or regulation that prohibits [or] restricts' an assignment of a prize won in a state lottery 'is ineffective.' " *Id.* at 638 (quoting Tex. Bus. & Com.Code § 9.406(f)). The Act implementing the UCC provision

at issue in that case, unlike House Bill 4, contained no explicit exceptions; any exception would have had to have been imported from a distinct piece of legislation, the bill amending the Lottery Act.

Further, strong policy considerations dictated by the Legislature necessarily shape our decisions interpreting the UCC; while our opinion did not discuss them, those considerations made the application of otherwise-applicable canons of construction inappropriate in *Lottery Commission.* The UCC is intended to simplify, clarify, and modernize commercial practices. *See Sw. Bank v. Info. Support Concepts, Inc.,* 149 S.W.3d 104, 110 (Tex.2004); Tex. Bus. & Com.Code § 1.103. Our decision in *Lottery Commission* is consistent with the mandate that the UCC "is to be regarded as particularly resistant to implied repeal." Tex. Bus. & Com.Code § 1.104 cmt. 1. The considerations that precluded our application of canons of construction in *Lottery Commission* are simply not present in this case.

It is apparent from the context in which section 74.251(a) and section 33.004(e) were enacted that section 74.251(a)'s "[n]otwithstanding any other law" language is not unambiguous. The Court's construction ignores section 74.251(b)'s impact, gives no effect to section 33.004(e)'s joinder provision in health care liability claims, and disrupts a carefully constructed scheme balancing the interests of both defendants and claimants, despite explicit expressions of contrary legislative intent. Accordingly, I respectfully dissent.