

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00316-CV

---

JONATHAN WHEELER AND BROOKE WHEELER, APPELLANTS

V.

J. M. MARTIN CUSTOM HOMES, INC. AND JUSTIN MARTIN, INDIVIDUALLY AND
D/B/A J. M. MARTIN CUSTOM HOMES, APPELLEES

---

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 24-04-07885, Honorable Reed A. Filley, Presiding

---

December 11, 2025

OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

When homeowners discover that their builder has left subcontractors unpaid, they face an uncomfortable choice: pay twice for work already performed or risk liens on their property. According to the pleadings, Appellants Jonathan and Brooke Wheeler paid subcontractors directly when faced with this situation. When the Wheelers sued over the resulting payment dispute, their builder, Appellees J.M. Martin Custom Homes, Inc. and Justin Martin (collectively "Martin"), counterclaimed for business disparagement, alleging the Wheelers falsely told others about Martin's payment practices.

This appeal does not concern the truth of any statements about Martin's payment practices. We decide only whether Martin's business disparagement claim falls within the Texas Citizens Participation Act's protections. It does. Because Martin filed no evidence to support his claim—as required by § 27.005(c) of the Texas Civil Practice and Remedies Code—dismissal is mandatory under § 27.009(a). We reverse the trial court's denial of the TCPA motion, render judgment that Martin take nothing on his business disparagement counterclaim, and remand for determination of attorney's fees and costs under § 27.009.

## BACKGROUND

According to the parties' pleadings, the Wheelers contracted with Martin to build a custom home in Garza County. During construction, the Wheelers began paying subcontractors directly and deducted those payments from amounts owed to Martin. Martin filed a mechanic's lien against the property for the unpaid balance.

The Wheelers sued to remove the lien, alleging they paid subcontractors directly because Martin failed to pay them timely, resulting in lien notices by the subcontractors. Martin admitted the contract but denied the payment allegations. He claimed the Wheelers' refusal to pay according to contract terms prevented him from paying subcontractors.

Martin also counterclaimed for business disparagement, claiming the Wheelers "went to numerous vendors and members of the general public and intentionally and maliciously maligned [Martin] and the quality of their work as well as [Martin's] business

2

ethics regarding payment of his obligations, which caused damage to [Martin's] professional reputation." He sought $100,000 in damages.

The Wheelers denied making disparaging comments but moved to dismiss the business disparagement claim under the TCPA under §§ 27.003(a) and 27.010(b)(2). Martin responded by amending his counterclaim to identify ten specific statements allegedly made between July and December 2023. According to Martin, the Wheelers:

- Told Cody King that "by the time this is all over, [the Wheelers] were going to have a lot of liens and that Martin doesn't pay his bills;"

- Told Blake Swanner that "Martin is not taking care of business and doesn't pay his bills;"

- Told vendors that Martin does not finish his jobs (84 Lumber, Greg Gayden);

- Told subtractors that Martin was not paying his subcontractors (Alex Tarrin, Jamie Dozier) and was not paying his bills (John Soto, Scott Williams);

- Made "general disparaging comments" to John Dominey, a Martin customer; and

- told vendor/subcontractor Tony Graves that the Wheelers devised a plan with counsel whereby "[Martin] would not receive shit."

Martin filed a three-page response opposing the TCPA motion. He argued the statute did not apply because "[t]he subject matter of the lawsuit is a private contract between the parties and is not a matter of 'public concern' nor are Defendants/Counter-Plaintiffs public figures in any sense of the word." He submitted no evidence supporting his disparagement claim.

Following a hearing, the trial court denied the Wheelers' TCPA motion on October 2, 2024. This interlocutory appeal followed.

3

## A. The Amended TCPA Creates Two Pathways to Dismissal

The Texas Citizen Participation Act, is codified in Chapter 27 of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE §§ 27.001–27.011. Originally passed in 2011, the Act's stated purpose was and continues to be, "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." § 27.002.

We review questions of statutory construction de novo. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When interpreting the TCPA, we follow settled principles: we adopt the interpretation supported by the statute's plain language unless it would lead to absurd results. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). When following where the language leads, we presume the Legislature "included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). We construe the TCPA's provisions as a whole, not in isolation, *Panchakarla*, 602 S.W.3d at 540, giving undefined terms their ordinary meaning unless the statutory context demands otherwise. *Baumgardner v. Brazos River Auth.*, 714 S.W.3d 597, 601 (Tex. 2025).

The TCPA, as amended in 2019, offers defendants two distinct routes to dismissal. It permits dismissal "[i]f a legal action is based on or is in response to a party's exercise

4

of the right of free speech . . . **or** arises from any act of that party in furtherance of the party's communication or conduct described by § 27.010(b)."  Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.003 (emphasis added).  The statute's use of "or" between these pathways confirms they operate independently.  *See, e.g., Seward v. Santander*, 713 S.W.3d 341, 357 n.59 (Tex. 2025) (construing disjunctive "or" in statute to mean conditions are alternatives, not cumulative requirements); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 581 (Tex. 2000) (use of "or" between phrases "signifies a separation between two distinct ideas").[1]

The first pathway (constitutional protections for free speech, petition, and association) requires that the challenged conduct involve matters of public concern.  The second pathway (protection for acts described in § 27.010(b)) contains no such requirement.  Martin vigorously contests whether the Wheelers' alleged statements constitute matters of public concern under the first pathway.  However, it is unnecessary to resolve this issue.  Even assuming the alleged statements involve purely private matters that fall outside constitutional protection,[2] the TCPA's second pathway— § 27.010(b)(2)—independently mandates dismissal.

---

[1] Section 27.005(b) reinforces this dual structure, requiring dismissal if the movant shows the legal action is based on either: "(1) the party's exercise of" constitutional rights, "**or** (2) the act of a party described by Section 27.010(b)."

[2] *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985) (holding a false credit report sent to five subscribers about a construction contractor's solvency was "speech solely in the individual interest of the speaker and its specific business audience," and did not constitute a matter of public concern); *KRJJ Enterprises v. Willis*, No. 01-23-00198-CV, 2023 Tex. App. LEXIS 9348, at *8–9 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, no pet.) (holding that allegedly false statements made to one or more credit agencies about a tenant's "fidelity in paying bills" did not rise to public concern under the amended TCPA).  *But see MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 193 (Tex. App.—El Paso 2017, no pet.) (holding that under pre-2019 TCPA, statements about unpaid billings to public media outlets constituted matters of public concern because they were "in connection" with a "service" in the marketplace).

5

B. The Wheelers' Communications Fall Within Section 27.010(b)(2)

Section 27.010(b)(2) makes the TCPA applicable to Martin's counterclaim if it is "related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." § 27.010(b)(2). The statutory text demonstrates the Legislature protected not merely formal online reviews, but the full spectrum of consumer feedback through any medium.

Martin's business disparagement claim is undeniably "related to" the Wheelers' alleged communications about his business. His amended counterclaim specifically targets statements the Wheelers purportedly made to subcontractors, vendors, and a customer about Martin's payment practices and job completion, including:

- "Consumer opinions" – Wheelers' views on Martin's business practices;
- "Commentary" – their remarks about Martin's payment practices;
- "Reviews" – their assessments of Martin's performance; and
- "Ratings" – their evaluations of Martin's business quality.

The Wheelers' alleged comments constitute protected communication of consumer opinions about Martin's business practices. Whether shared by telephone, in person, or through any other medium, these evaluations represent precisely what the TCPA was intended to encompass. Because Martin's business disparagement claim is "related to" the Wheelers' protected communications under § 27.010(b)(2), the TCPA applies.

C. Martin Failed to Meet His Burden Under the TCPA's Framework

6

Finding the TCPA applies triggers Martin's burden to provide "clear and specific evidence" of each element of its business disparagement claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). Notwithstanding the TCPA's applicability, business disparagement plaintiffs can still proceed if they present clear and specific evidence of false and disparaging statements made with malice, without privilege, and resulting in special damages. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

However, Martin's complete failure to present any evidence mandates dismissal under the statute's plain language.[3] We therefore reverse and render judgment that Martin take nothing, with remand for determination of damages and costs pursuant to § 27.009.

D.  The Dissent Misreads the Statutory Structure and Text

We now turn to Justice Yarbrough's dissent. Section 27.010 contains the heading "Exemptions," leading the dissent to reason that § 27.010(b)'s role is limited to providing a list of exceptions to the exemptions found is subsection (a). However, the dissent's analysis ignores the most basic textual fact: §§ 27.003(a) and 27.005(b) each explicitly reference "Section 27.010**(b)**" as an independent basis for dismissal. Its invocation of "judicial restraint" accordingly rings hollow; it is essentially asking us to disregard the statute's explicit dual-pathway structure.

---

[3] *See* § 27.005(b) (a court "shall dismiss a legal action" if the moving party demonstrates an act described by section 27.010(b)). *But see* § 27.005(c) (a court "may not dismiss" an action if the party bringing the claim "establishes by clear and specific evidence a prima facie case for each essential element of the claim . . .").

In this way, the dissent's conclusion—that the statute doesn't mean what it literally says—is erroneous. If the Legislature intended § 27.010(b) to apply only when the three exemptions under § 27.010(a) exist, it could have included those as separate grounds for dismissal in §§ 27.003(a) and 27.005(b) rather than using the language in § 27.010(b)(2). Instead, the Legislature chose detailed language protecting "communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2). This specific conduct-based test, not exemption categories, determines TCPA applicability.

After quoting Senator Hughes's floor statement, the dissent also asks rhetorically, "What more evidence of legislative intent do we need than the author of the bill itself?" The answer to that question is simple: **the statutory text itself**. As the Supreme Court has repeatedly held on this precise question, "statements explaining an individual legislator's intent cannot reliably describe the legislature's intent." *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 137 (Tex. 2018). *See also, e.g., AT&T Comms. of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–29 (Tex. 2006) ("[T]he statement of a single legislator, even the author and sponsor of the legislation, does not determine legislative intent."); *Molinet*, 356 S.W.3d at 414 ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute."). Construing unambiguous statutes according to their language as expressly written "ensures that ordinary citizens are able to rely on the

language of a statute to mean what it says." *Tex. Health Presby. Hosp.*, 569 S.W.3d at 137 (*quoting Molinet*, 356 S.W.3d at 414).[4]

Moreover, the rationale employed in the dissenting opinion depends on a misreading of the term "Notwithstanding" in subsection (b).[5] The dissent treats the term as limiting, suggesting § 27.010(b) applies only to the three exemptions listed in (a)(2), (7), and (12). But when used in a prepositional phrase, "notwithstanding" means "despite" or "in spite of." BLACK'S LAW DICTIONARY 1281 (11th ed. 2019); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 848 (11th ed. 2014). Courts consistently interpret "notwithstanding" as an expansive term that **overrides** limitations, not a restrictive term creating them. *See Gulf Oil Corp. v. Southland Royalty Co.*, 496 S.W.2d 547, 552 (Tex. 1973) (interpreting lease clause stating "anything in this lease to the contrary notwithstanding" as giving the section "priority over any contrary provision of the lease," not making it subordinate to others); *Helmerich & Payne Intern. Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that "notwithstanding anything to the contrary contained herein" means parties agree the paragraph must be given effect regardless of contrary provisions).

To illustrate: when the statute says "Notwithstanding [the exemptions found in] Subsections (a)(2), (7), and (12), this chapter applies to" consumer communications, it means "Despite [the exemptions found in] Subsections (a)(2), (7), and (12), this chapter

---

[4] No doubt, courts are free to turn to extratextual sources such as the statute's legislative history when statutory language is ambiguous and plain language alone would be unavailing. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 229 (Tex. 2010). But no party or member of our Court directs us to any ambiguity.

[5] *See* § 27.010(b) ("Notwithstanding Subsections (a)(2), (7), and (12), this chapter applies to . . .").

9

applies to" consumer communications. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b). The Legislature was emphasizing that consumer communications receive protection even in commercial contexts where those exemptions might otherwise bar coverage. By redefining "notwithstanding" to mean "only when," the dissent turns the statutory language on its head.

The dissenting opinion also disagrees with the Beaumont Court of Appeals' analysis in *Gulf Coast Pros* pertaining to "the act of a party" described in § 27.010(b).[6] But the dissent misunderstands what constitutes such an "act." Communicating is an act.[7] So is gathering, receiving, posting, processing, evaluating, reviewing, and rating. Each of these is a separate "act of a party" that can trigger TCPA protection under §§ 27.003(a) and 27.005(b)(2) depending on the circumstances. If, as alleged, the Wheelers allegedly told subcontractors, vendors, and customers that Martin was not paying his subcontractors or finishing his jobs, they would have been engaging in the protected **act** of communicating consumer opinions and reviewing Martin's business practices. This is sufficient to invoke TCPA protection.

Justice Scalia, whose statutory construction treatise the dissent frequently cites, directly rejected this approach in *United States v. Brogan*, 522 U.S. 398, 408 (1998). He wrote that "[c]ourts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so, and no matter how widely the blame may be spread." *Id.* The dissenting opinion would do exactly what *Brogan* forbids: judicially

---

[6] *Gulf Coast Pros, LLC v. Sweeney*, No. 09-23-00320-CV, 2024 Tex. App. LEXIS 4290 at *27–28 (Tex. App.—Beaumont June 20, 2024, no pet.).

[7] Lest there be any doubt, *see* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 251 (11th ed. 2014) defining "communication" as "an act or instance of transmitting."

10

create limitations on clear statutory language based on policy arguments about what the Legislature supposedly intended.

In conclusion, we hold the Legislature enacted § 27.010(b)(2) in 2019 to address problems with the prior version of the TCPA. If the amending language is still too broad, that is the Legislature's responsibility to address, not an invitation for courts to impose their own policy preferences.

## CONCLUSION

When the Wheelers allegedly told others that Martin was not paying his bills or finishing his jobs, they were engaging in the everyday consumer practice of sharing experiences to help others avoid similar problems. This is how commerce works.

The trial court erred in denying the Wheelers' TCPA motion to dismiss. The Wheelers' alleged communications to Martin's subcontractors and vendors constitute protected acts under § 27.010(b)(2)—the communication of consumer opinions, commentary, and reviews about Martin's business practices. In response, Martin presented no evidence supporting his business disparagement claim as required under § 27.005(c) for potentially avoiding dismissal.

We therefore reverse and render judgment that Martin take nothing, with remand for determination of damages and costs pursuant to § 27.009.

Lawrence M. Doss<br>
Justice

Yarbrough, J., dissenting.

11