

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

September 13, 2016

Mr. Mike Morath
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. KP-0113

Re: Procedures for requesting video surveillance of special education settings pursuant to Education Code section 29.022 (RQ-0103-KP)

Dear Commissioner Morath:

On behalf of the Texas Education Agency ("TEA"), you ask four questions related to the construction of section 29.022 of the Education Code, which requires video surveillance of certain special education settings upon request.[1]  You explain that the purpose of the bill was "to deter incidences of abuse against vulnerable non-verbal children while also protecting special education teachers from unfounded claims of misconduct." Request Letter at 1 (referring to bill sponsor's statement of intent).  The Legislature enacted section 29.022 in 2015, and its changes apply "beginning with the 2016-2017 school year."[2]  Relevant to your questions, subsection 29.022(a) provides:

> In order to promote student safety on request by a parent, trustee, or staff member, a school district or open-enrollment charter school shall provide equipment, including a video camera, to each school in the district or each charter school campus in which a student who receives special education services in a self-contained classroom or other special education setting is enrolled. Each school or campus that receives equipment shall place, operate, and maintain one or more video cameras in each self-contained classroom or other special education setting in which a majority of the students in regular attendance are:
>
> (1) provided special education and related services; and

---

[1]Letter from Mr. Mike Morath, Comm'r of Educ., Tex. Educ. Agency, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Mar. 11, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]Act of May 31, 2015, 84th Leg., R.S., ch. 1147, § 4, 2015 Tex. Gen. Laws 3860, 3862.

> (2) assigned to a self-contained classroom or other special
> education setting for at least 50 percent of the instructional
> day.

TEX. EDUC. CODE § 29.022(a).

You first ask whether a request for video surveillance under subsection 29.022(a) "only requires that video surveillance be conducted in one self-contained instructional setting[.]" Request Letter at 3. You note that some argue that "the intent of the bill is for a request to trigger video surveillance in a single self-contained instructional setting, while others contend that . . . a request requires that video surveillance be conducted in all of the self-contained instructional settings in the district or charter school." *Id.* at 2. In construing statutes, courts "ascertain and give effect to the Legislature's intent as expressed by the statute's language." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). "Where text is clear, [it] is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). As the Texas Supreme Court has repeatedly recognized, "the words the Legislature chooses should be the surest guide to legislative intent." *Id.*; *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

The plain language of subsection 29.022(a) requires a school district or open-enrollment charter school to, upon request, "provide equipment, including a video camera, *to each school . . .* in which a student who receives special education services in a self-contained classroom or other special education setting is enrolled." TEX. EDUC. CODE § 29.022(a) (emphasis added). Furthermore, schools receiving equipment pursuant to such a request must place a video camera "in each self-contained classroom or other special education setting" that meets the requirements of the statute. *Id.* The common understanding of the word "each" is "[e]very one of a group considered individually." AMERICAN HERITAGE COLLEGE DICTIONARY 439 (4th ed. 2002); *see Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (explaining that courts give undefined words their common, ordinary meaning unless the statute clearly indicates otherwise and that courts look to dictionary definitions, among other sources, to supply that common meaning). Nothing in the plain language of section 29.022 suggests that a parent, trustee, or staff member's request is limited to or results in the provision of equipment to only a single classroom. To the contrary, the Legislature has required that upon receiving a request, a school district shall provide the equipment not to a single classroom but "to each school in the district" providing students special education services. TEX. EDUC. CODE § 29.022(a). Each school receiving equipment must, in turn, place, operate, and maintain a camera in "each self-contained classroom or other special education setting." *Id.* Were TEA to construe subsection 29.022(a) otherwise, it would contravene the plain language of the statute.[3]

Both in a letter to your office and in briefing submitted to this office in connection with your request, sponsors of the bill enacting section 29.022 have stated that their intent was for a

---

[3]The authors of the bill enacting section 29.022 believe that "TEA can clarify these concerns through rulemaking." Letter from Honorable Eddie Lucio, Jr., State Senator & Honorable Senfronia Thompson, State Representative, to Mr. Michael Williams, Comm'r of Educ., Tex. Educ. Agency (Oct. 1, 2015) ("Lucio Letter") (attached to Request Letter) (on file with the Op. Comm.). You do not indicate that you will adopt a rule providing this clarification, but to the extent that you adopted restrictions beyond what the statutory provision allows, a court would likely conclude that you had exceeded your rulemaking authority.

request by a teacher or parent to install cameras to result in "installation only in the classroom where the teacher offers instruction or the child/dependent attends class."[4]  However, courts construing statutory language "give little weight to post-enactment statements by legislators." *In re Doe*, 19 S.W.3d 346, 352 (Tex. 2000).  "[T]he intent of an individual legislator, even a statute's principal author, is not legislative history controlling the construction to be given a statute." *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993).  While such stated intent would, from a policy perspective, provide a reasonable limitation to further the purpose of section 29.022 while potentially limiting the significant financial burden placed on school districts, courts "read unambiguous statutes as they are written, not as they make the most policy sense." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013).

"[T]he Legislature expresses its intent by the words it enacts and declares to be the law[,]" and courts are bound by those chosen words. *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).  "Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute." *Id.*  Only when a construction of a statute's plain meaning leads to absurd or nonsensical results will courts refrain from enforcing that plain meaning. *Jaster*, 438 S.W.3d at 569.  Furthermore, the Texas Supreme Court has explained that "[t]he absurdity safety valve is reserved for truly exceptional cases," and that even when the result of a statute seems unreasonable, "reasonableness is not the standard for eschewing plain statutory language." *Id.* at 569–70.  While allowing a parent, trustee, or staff member to request equipment for surveillance in all special education classrooms in a district could create significant costs for school districts subject to those requests, the application of the common meaning of the Legislature's words does not lead to absurd results such that a court would ignore their plain meaning.[5]  If the Legislature intends for section 29.022 to have a narrower application, it should amend the statute to limit a request to a single classroom rather than to "each school" and "each self-contained classroom or other special education setting." TEX. EDUC. CODE § 29.022(a).

Assuming this answer to the first question, you next ask whether subsection 29.022(a) allows "a requestor to limit his or her request for video surveillance to one or more specific instructional settings[.]" Request Letter at 3.  Only when a parent, trustee, or staff member initiates a request will a school district or open enrollment charter school have a duty to take action under section 29.022.  Given the anticipated expense of providing this equipment to each school with special education services in a district, it would seem reasonable to allow a requestor to limit the expanse of his or her request to one specific instructional setting.  However, the language chosen by the Legislature narrowly phrases the nature of the request to require the provision of equipment "to each school in the district or each charter school campus in which a student who receives special education services in a self-contained classroom or other special education setting is

---

[4]*See* Lucio Letter at 1; *see also* Brief from Honorable Eddie Lucio, Jr., State Senator & Honorable Senfronia Thompson, State Representative, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Apr. 1, 2016) ("Lucio Brief") (on file with the Op. Comm.).

[5]Briefing submitted on behalf of the Texas Association of School Boards Legal Assistance Fund and multiple independent school districts estimates that the recording and audio equipment for one classroom setting would cost approximately $1,900.00. *See* Brief from J. David Thompson, III, Thompson & Horton, LLP, to Honorable Ken Paxton, Tex. Att'y Gen. at 7 (Apr. 15, 2016) (on file with the Op. Comm.).  Based on that estimate, the briefing notes that if a single request triggered a requirement that cameras be placed in all special education settings in the district, a single request "would cost Fort Bend ISD $4 million in up-front costs, Cypress-Fairbanks ISD almost $3 million, and Katy ISD almost $1.4 million." *Id.*

enrolled." TEX. EDUC. CODE § 29.022(a). Construing the statute otherwise would contradict the plain language of the statute.

In your third question, you ask whether the term "staff member" may "reasonably be construed to mean only a campus employee who is assigned to a self-contained instructional setting described in the statute and certain campus employees with supervisory authority, such as a principal and assistant principal[.]" Request Letter at 3. You note that some stakeholders "contend that the term should be narrowly construed so that only a teacher or teacher assistant assigned to a self-contained instructional setting can request video surveillance," while others contend "that any campus or district employee should be allowed to request surveillance." *Id.* at 2. Since submitting your request, your agency has adopted a rule that defines "staff member" as "a teacher, related service provider, paraprofessional, or educational aide assigned to work in the self-contained classroom or other special education setting" and "the principal or an assistant principal of the campus at which a self-contained classroom or other special education setting is located." 19 TEX. ADMIN. CODE § 103.1301(b)(2) (Tex. Educ. Agency, Video Surveillance of Certain Special Education Settings).

Subsection 29.022(k) provides: "The commissioner may adopt rules to implement and administer this section, including rules regarding the special education settings to which this section applies." TEX. EDUC. CODE § 29.022(k). However, when the Legislature authorizes an agency to adopt rules, the agency "may adopt only such rules as are authorized by and consistent with its statutory authority." *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008). Important to your question, an agency rule "may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with" the relevant statutory provisions. *Burnet Cty. Appraisal Dist. v. J.M. Huber Corp.*, 808 S.W.2d 613, 615 (Tex. App.—Austin 1991, writ denied).

The plain language of subsection 29.022(a) authorizes a "staff member" to make a request for the installation of video equipment. TEX. EDUC. CODE § 29.022(a). As the sponsors of the bill enacting that section have recognized, section 29.022 provides "no explicit direction on the scope of the term 'staff member' as it pertains to who can request a camera." Lucio Brief at 2. While they urge a narrow construction of the term that "precludes staff from requesting cameras in classrooms or on campuses with which they have no connection," nothing in the language of section 29.022 itself creates this limitation on who qualifies as a staff member. *Id.* at 3. A common understanding of the word "staff" is "all the people employed by a particular organization." NEW OXFORD AMERICAN DICTIONARY 1695 (3d ed. 2010). A rule defining "staff member" more narrowly than the common understanding imposes additional restrictions in excess of the plain language used in the statute. A court addressing the definition of "staff member" in this context would therefore likely conclude that TEA has exceeded its rulemaking authority by adopting a definition more restrictive than the plain language of the statute.

In your final question, you ask whether subsection 29.022(b) allows "a school district or charter school to discontinue video surveillance in a self-contained instructional setting if the circumstances surrounding the request have changed substantially." Request Letter at 3. Subsection (b) of section 29.022 provides:

> A school or campus that places a video camera in a classroom or
> other special education setting in accordance with Subsection (a)
> shall operate and maintain the camera in the classroom or setting as
> long as the classroom or setting *continues to satisfy the requirements
> under Subsection (a).*

TEX. EDUC. CODE § 29.022(b) (emphasis added). The requirements placed on the classroom or special education setting under subsection (a) include being a "self-contained classroom or other special education setting in which a majority of the students in regular attendance are: (1) provided special education and related services; and (2) assigned to a self-contained classroom or other special education setting for at least 50 percent of the instructional day." *Id.* § 29.022(a).

You suggest that the intent of subsection 29.022(b) "may be to keep the cameras in place for virtual perpetuity, or it may simply be to prevent school districts and charter schools from disabling or removing cameras from a setting when the requestor still wants video surveillance." Request Letter at 4. Specifically you ask about instances when "the student whose parent requested video surveillance is no longer assigned to the classroom or has left the campus or district, the teacher who requested video surveillance is no longer assigned to the classroom, [or] the term of office of the trustee who requested video surveillance has ended." *Id.* at 3.

As previously discussed, a district's response to a request by a parent, trustee, or staff member is not tied to a specific classroom but instead results in provision of "equipment . . . to each school in the district . . . ." TEX. EDUC. CODE § 29.022(a). Thus, subsection (a) does not require that a parent, trustee, or staff member continue to be affiliated with the district or special education setting in order for the operation and maintenance of the camera to continue. The plain language of subsection 29.022(b) allows a school to discontinue operation and maintenance of a camera only if a setting in which the camera has been placed is no longer a "self-contained classroom or other special education setting in which a majority of the students in regular attendance are: (1) provided special education and related services; and (2) assigned to a self-contained classroom or other special education setting for at least 50 percent of the instructional day." *Id.* § 29.022(b).

The implementation of section 29.022 could impose significant financial burdens upon certain school districts. However, we "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TCS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). The plain language of the statute does not allow for the reasonable limitations that you suggest, and this office cannot rewrite the statute. Such power rests exclusively with the Legislature.

# S U M M A R Y

The language chosen by the Legislature in subsection 29.022(a) of the Education Code requires that upon receiving a request, a school district shall provide equipment not to a single classroom but "to each school in the district" that provides students special education services and otherwise meets the requirements of the statute. Each school receiving equipment must place, operate, and maintain a camera in "each self-contained classroom or other special education setting" providing special education services.

A rule defining "staff member" to include only a teacher, related service provider, paraprofessional, or educational aide assigned to work in a self-contained classroom or other special education setting or the principal or assistant principal of the campus at which a self-contained classroom or other special education setting is located imposes additional restrictions in excess of the plain language chosen by the Legislature. A court addressing such a definition would likely conclude that the Texas Education Agency has exceeded its rulemaking authority by adopting a rule contrary to the statutory provisions.

Subsection 29.022(b) allows a school to discontinue operation and maintenance of a camera if a setting in which the camera has been placed is no longer a "self-contained classroom or other special education setting in which a majority of the students in regular attendance are: (1) provided special education and related services; and (2) assigned to a self-contained classroom or other special education setting for at least 50 percent of the instructional day."

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee