# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-18-00147-CV

<hr>

**Commission for Lawyer Discipline, Appellant**

**v.**

**Omar Weaver Rosales, 201701087, 201700840, 201700279, 201700153, 201607308, 201607292, 201701948, 201702052, Appellee**

<hr>

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-17-005008, HONORABLE R. H. WALLACE, JR., JUDGE PRESIDING

<hr>

## C O N C U R R I N G   O P I N I O N

When I use a word . . . it means just what I choose it to mean—neither more nor less.

Lewis Carroll, Through the Looking-Glass, chapter 6, p. 205 (Macmillan and Co. ed. 1934) (1871).

We are indeed through the looking glass. The Texas Citizens Participation Act ("TCPA"), a statute with the express purpose of protecting the right to petition, speak freely, associate freely, and otherwise participate in government has become a barrier to disciplining lawyers for violating the Disciplinary Rules of Professional Conduct ("Disciplinary Rules"). While I join in reversing the trial court's dismissal of the lawsuit filed by the Commission for Lawyer Discipline of the State Bar of Texas ("Disciplinary Commission"), I would do so because these proceedings are not subject to the TCPA.

The Disciplinary Commission brought an enforcement proceeding against lawyer Omar Rosales for violating the Disciplinary Rules by engaging in a predatory scheme to extort money from medical professionals through demand letters containing material, misleading, and false statements of law and fact. Rosales often sent the letters on behalf of purported clients, such as his brother or "The Center for Veteran's Access."

The TCPA protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). Its purpose is clearly stated in the Act:

> PURPOSE. The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

Tex. Civ. Prac. & Rem. Code § 27.002. The stated purpose has nothing to do with regulating the legal, or any other, profession. And it applies only to a set of circumstances where a "legal action" concerns "a party's exercise of the right of free speech, right to petition, or right of association . . . ." *Id.* § 27.003. As we recently noted in *Sullivan v. Texas Ethics Commission*, "the act does not protect unfettered constitutional rights of free speech and to petition, but, rather, expressly protects those rights only to 'the maximum extent *permitted by law*.'" 551 S.W.3d 848, 853-54 (Tex. App.—Austin 2018, pet. filed) (emphasis added) (citing Tex. Civ. Prac. & Rem. Code § 27.002). Attorneys cede their right to "unfettered" speech when they are licensed by the State of Texas to practice law in its judicial system. For example, attorneys may not exercise their "free speech" rights by going to

2

city hall and publicly disclosing their clients' confidential information at a political rally. This is prohibited by the Disciplinary Rules. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.05(b), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

In *Sullivan*, we held that enforcement actions by the Texas Ethics Commission ("Ethics Commission") were not subject to the TCPA. *Sullivan*, 551 S.W.3d at 856 ("[W]e hold that the TCPA does not apply to the circumstances here."). We did so because "the very issue to be tried" in the trial court action was "whether the respondent exercised his rights *beyond what the law permits*." *Id.* at 855 (emphasis added). And applying "the TCPA in this context would frustrate the legislature's specific and thorough schemes outlined in chapters 305 and 571 for enforcement of the lobbyist-registration statute." *Id.* "To hold otherwise would allow respondents to end-run the specifically enacted scheme for enforcement of the lobbyist-registration statute, a result the legislature could not have intended when enacting the TCPA." *Id.* at 855-56. There is no reason to treat the Disciplinary Commission any differently.

The Disciplinary Commission seeks to try whether a person subject to its regulation, i.e. a lawyer licensed to practice in Texas, "exercised his rights beyond what the law permits." Like lobbyists, lawyers are subject to rules of ethics and professional conduct. The Disciplinary Rules are enforced in accordance with the procedures outlined in the Texas Rules of Disciplinary Procedure. Applying the TCPA to lawyer disciplinary proceedings would just as equally frustrate the Legislature's specific and thorough schemes for regulating the legal profession as it would the lobbyist-registration statute. *See generally* Tex. Gov't Code Chapter 81, Subchapter E ("Discipline").

While the majority attempts to distinguish *Sullivan*, the differences are not substantive when viewed in context. Unlike the Disciplinary Commission, the Ethics Commission comes to the

3

trial court with an underlying regulatory decision having been made that a violation occurred. But significant regulatory action has occurred prior to the Disciplinary Commission having filed suit, including the determination that a violation likely occurred.

Upon receipt of a complaint against a lawyer, the Chief Disciplinary Counsel ("CDC") determines whether the grievance, on its face, alleges professional misconduct and whether it should be dismissed. *See* Tex. Rules Disciplinary P. R. 2.10 ("Classification of Grievances"), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A-1. The person who filed the grievance has the right to appeal the CDC's classification decision to dismiss the grievance to the Board of Disciplinary Appeals ("BODA"), which can reverse the decision. Once the grievance is classified as a Complaint, it is sent to the respondent lawyer who has 30 days from receipt to respond. *Id.* R. 2.10(B). Within 60 days of the response deadline, the CDC, through its investigation, must determine whether there is "Just Cause" to believe that professional misconduct occurred. *Id.* R. 2.12 ("Investigation and Determination of Just Cause"). During the investigation, the CDC has the power to subpoena witnesses. *Id.* R. 2.12(B).

If the CDC does not conclude there is "Just Cause," all information and results of the CDC's investigation is presented to the Summary Disposition Panel, which votes to either affirm or reverse that determination. *Id.* R. 2.13 ("Summary Disposition Setting"). Upon a finding of "Just Cause," the respondent lawyer is given written notice of the allegations and rule violations. The respondent has 20 days to notify the CDC whether he or she chooses to have the case heard before an evidentiary panel of the grievance committee or by a district court, with or without a jury. *Id.* R. 2.15 ("Election").

4

It is only after this thorough regulatory process has occurred, with multiple levels of due process, and the Disciplinary Commission has determined that professional misconduct likely has occurred, that a disciplinary proceeding complaint is filed in district court. The lawyer against whom the complaint has been filed has had the opportunity to participate in the regulatory process, and numerous stakeholders have participated in the decision of whether a violation likely occurred. And it is the lawyer (determined to have likely violated the Disciplinary Rules) who has the power to decide whether the case is heard by an evidentiary panel or a district court.

The carefully crafted regulatory scheme for lawyer discipline is entitled to no lesser deference than the one created for addressing ethical complaints against lobbyists. Importantly, neither of the initial determinations by the Texas Ethics Commission or the Commission on Lawyer Discipline are entitled to deference at trial. Both lawyers and lobbyists are entitled to de novo trials of the alleged professional violation. *See generally id.* Part III ("Trial in District Court"); Tex. Gov't Code § 571.133(d) (noting that appeals are "not limited to questions of law," "the substantial evidence rule does not apply," and the "action shall be determined by trial de novo"). That means the parties start anew in the trial court as if such finding had never been made. Indeed, the Ethics Commission's determination is not even admissible at trial. *See* Tex. Gov't Code § 571.133(d) (stating that the trial court "may not admit in evidence the fact of prior action by the commission or the nature of that action"). The fact that the de novo trial is technically labeled an "appeal" for lobbyists is not legally significant. There is no basis to conclude that the Texas Legislature intended to "undermine" regulatory actions against lawyers any more or less than it intended to do so against lobbyists, "especially considering the TCPA's purpose." *Sullivan*, 551 S.W.3d at 856.

5

It is also noteworthy that the Legislature granted to the Texas Supreme Court the authority and discretion to "promulgate rules regarding the classification and disposition of grievances." Tex. Gov't Code § 81.0753. In accordance with that broad grant of authority, the Supreme Court promulgated the rules governing grievances. As the preamble to those rules state:

> The Supreme Court of Texas has the *constitutional and statutory responsibility* within the State for the lawyer discipline and disability system, and has *inherent power* to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability in a manner that does not discriminate by race, creed, color, sex, or national origin. *To carry out this responsibility, the Court promulgates the following rules for lawyer discipline and disability proceedings.*

Tex. Rules Disciplinary P. Preamble (emphases added). Rosales would have this Court determine that the Legislature, in enacting the TCPA, *impliedly amended* the Texas Supreme Court's rulemaking authority as to *certain* grievances. This is contrary to the language and purpose of the TCPA and the State Bar Act. *See* Tex. Gov't Code § 81.012(3) (listing one purpose of the State Bar Act as "to foster and maintain on the part of those engaged in the practice of law high ideals and integrity, learning, competence in public service, and high standards of conduct").

Notably, in 2017 (six years after the TCPA was passed), the Texas Legislature passed new legislation extending the operations of the State Bar of Texas until the year 2029, as required by the Texas Sunset Act. The legislation contained significant changes to the attorney disciplinary system, but the Texas Supreme Court's authority to determine the procedural rules for grievances was not changed. *See* Tex. S.B. 302, 85th Leg., R.S. (2017). As the Disciplinary Commission explained in detail in its brief, many of the Rules of Disciplinary Procedure conflict

6

with application of the TCPA. The Legislature reaffirmed in 2017 that the Texas Supreme Court creates the rules for attorney grievance proceedings. However, today, this Court holds these procedural rules are trumped by the TCPA. Courts are to interpret statutes "according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414-15 (Tex. 2011). Conflicting statutes should be harmonized when possible, however if they cannot be harmonized, the more specific statutory provision prevails over the general one. *Sullivan*, 551 S.W.3d at 855 (citing *Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 107 (Tex. 2010); *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010)). Here, the State Bar Act is the specific statute governing lawyer discipline, and the Texas Supreme Court should continue to have the discretion afforded it by the Legislature to determine the procedures applicable to lawyer grievances.

Finally, it should not go unnoticed that the majority's ruling will only encourage attorneys facing discipline to file TCPA motions to dismiss as a way of delaying their proceedings. Instead of hearing final decisions on the merits, with the benefit of full discovery and a final judgment, this Court will be faced with more and more TCPA appeals in disciplinary proceedings. There is no free speech right, right of association, or right of petition for lawyers to violate the Disciplinary Rules. The purpose of the Disciplinary Rules is to protect the public from unethical lawyers who have breached their obligations to their clients, to the courts, and to the community. Accordingly, I join the majority's result but not its reasoning.

7

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Filed:   April 3, 2019

8