In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00176-CV**

_____

**IN RE COMMITMENT OF TERRY EUGENE WOODWORTH**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-07-09306-CV**

**MEMORANDUM OPINION**

In two issues, Appellant Terry Eugene Woodworth, a civilly committed sexually violent predator (SVP), contends the trial court erred by denying his pretrial motion and that Chapter 841 of the Texas Health and Safety Code under which he was committed is facially unconstitutional pursuant to *In re Commitment of Stoddard*, 619 S.W.3d 665 (Tex. 2020). We affirm the trial court's judgment and order of civil commitment.

1

PERTINENT BACKGROUND

The State filed an Original Petition to commit Woodworth as a SVP. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (the SVP statute). Woodworth filed an Original Answer asserting a general denial and affirmative defenses. Woodworth filed a pretrial motion, arguing that he is not subject to the SVP statute's jurisdiction because the State failed to prove it could legally notice him by petition since he had been previously recommended for an assessment by the Texas Department of Criminal Justice ("the TDCJ") in 2009, and he did not violate his Sex Offender Treatment Program while on parole after release from the TDCJ. Woodworth argued that his case presents novel issues related to a released individual's parole revocation documents and a prior assessment and that the SVP statute should not apply to any parole violator for the primary purpose of forcing individuals back into the SVP statue's evaluation jurisdiction.

Woodworth maintained that the State had previously provided notice and recommended Woodworth for an assessment, and the only issue to be considered under Chapter 841.021(d) was whether Woodworth's mandatory supervision was revoked based on the commission of a new sexually violent offense, for failure to adhere to the requirements of sex offender treatment and supervision, or failure to register as a sex offender. *See id.* § 841.021(a), (d). Woodworth explained that his mandatory supervision was revoked in 2013 due to technical parole violations that

2

were part of his mandatory supervision requirements set by the TDCJ Parole Board. Woodworth argued that since his technical violations did not violate his sex offender treatment requirements, those technical violations did not invoke Chapter 841.021(d)(2)(B)'s jurisdiction. *See id.* § 841.021(d)(2)(B). Woodworth explained that his parole officer, Officer Jimmie Stubblefield, signed an Adjustment Statement for the TDCJ Parole Board's record and checked a box noting that Woodworth was satisfactorily completing his sex offender treatment program and added a comment that Woodworth was compliant. Woodworth also explained the TDCJ Parole Board did not make any documented findings that he violated his sex offender treatment and supervision as required by Chapter 841.021(d)(2)(B). *See id.* Woodworth attached the following evidence: his 2009 Psychological Evaluation and Risk Assessment concluding that he has a behavioral abnormality and a medium-high risk of reoffending; the TDCJ Parole Division's Special Bulletin stating that Woodworth would be released on Mandatory Supervision in 2010; the TDCJ Parole Division's Adjustment Statement had a Satisfactory Adjustment to his Sex Offender Treatment Program but an Unsatisfactory Adjustment to Prohibition of internet access for certain sex offenders; and the State's Original Petition.

In its Response to Respondent's pretrial motion, the State argued that Woodworth's motion fails to address the issue at trial, which is whether he is a SVP. Instead, Woodworth's motion focuses on issues that concern the pre-suit procedures

3

established by the SVP statute that precede the filing of a legal case. The State argued that Woodworth's section 841.021(d) argument concerns his 2009 screening which did not lead to a filing of a legal case, and the current suit resulted from a second screening and behavioral abnormality assessment that did not violate section 841.021(d), which authorized a second screening and assessment based on Woodworth's failure to adhere to the requirements of his sex offender treatment and supervision. The State explained that Woodworth's supervision conditions included sex offender treatment and requirements that he not: (1) view, possess, purchase or subscribe to any photographs, literature, magazine, books, or visual media which depict sexually explicit images; or (2) use the Internet to access material that is obscene. The State further explained that in December 2012, the TDCJ Parole Division found that Woodworth violated both conditions based on his admissions that he viewed child and adult pornography on the Internet, and the Board of Pardons and Paroles revoked his mandatory supervision based on those findings.

The State argued that the TDCJ did not violate section 841.021(d) by initiating the review and behavioral abnormality assessment that resulted in the filing of the present case. The State further argued that Woodworth's argument is not jurisdictional and noted that this Court rejected a jurisdictional challenge based on another provision of section 841.021. *See In re Commitment of Evers*, 420 S.W.3d 81, 84–86 (Tex. App.—Beaumont 2012, pet. denied) (stating that nothing in section

841.021 indicates a legislative intent to divest a trial court of jurisdiction); *see also In re Commitment of Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012) (determining that section 841.021(d) is an administrative task and not a jurisdictional prerequisite).

The State attached the following evidence to its response: Board of Pardons and Paroles Proclamation of Revocation and Warrant of Arrest dated 2013; Board of Pardons and Paroles Hearing/Waiver results showing that the allegations included Woodworth's failure to not possess sexually explicit material and not to use the Internet to access a commercial social networking site and obscene material and its decision to revoke; the TDCJ Parole Division's Violation Report; Board of Pardons and Paroles Hearing Report finding Woodworth violated the conditions of his release, noting that Woodworth admitted that he accessed child and adult pornography sites on the Internet and viewed You Tube; Woodworth's Certificate of Mandatory Supervision listing his conditions of Mandatory Supervision; the TDCJ Parole Division's Notice of Special Conditions which stated that Woodworth shall participate in the Sex Offender Treatment Program, which included abiding by all mandated condition components as directed by the Board of Pardons and Paroles; and the Board of Pardons and Paroles's Board Policy regarding special conditions. The State argued that its evidence provides a sufficient basis for denying Woodworth's motion because it establishes Woodworth's mandatory supervision was revoked based on his failure to adhere to the requirements of sex offender

treatment and supervision and the screening process that resulted in the filing of the present suit did not violate section 841.021(d).

The trial court conducted a hearing on Woodworth's pretrial motion. Woodworth's counsel argued that section 841.021(d) requires a failure to adhere to the requirements of sex offender treatment and supervision, and there was no evidence Woodworth violated the requirements of sex offender treatment and supervision. Woodworth's counsel further argued that parole violations are not sex offender treatment violations. Woodworth's counsel agreed that Woodworth violated his parole but not his sex offender treatment, as the evidence shows that Woodworth was satisfactorily completing his sex offender treatment and was compliant. The State argued that the evidence shows Woodworth violated his sex offender treatment and supervision requirements by viewing adult and child pornography and there is a factual issue on that point. The State further argued that after Woodworth's probation was revoked, the TDCJ was authorized to screen him again for SVP proceedings.

The trial court denied Woodworth's pretrial motion. A jury found that Woodworth suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court signed a Final Judgment and Order of Civil Commitment.

ANALYSIS

In issue one, Woodworth argues the trial court erred by denying his pretrial motion because the undisputed and uncontroverted facts established that the State's lawsuit is barred by Section 841.021(d) of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 841.021(d).

"Subject-matter jurisdiction is 'essential to a court's power to decide a case.'" *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–53 (Tex. 2000)). The question of subject-matter jurisdiction is a question of law that we review de novo. *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451 (Tex. 2016); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Delgado v. Lopez*, No. 09-21-00019-CV, 2022 WL 5237397, at *2 (Tex. App.—Beaumont Oct. 6, 2022, no pet. h.) (mem. op.). In determining whether a trial court has subject-matter jurisdiction, we do not consider the merits of the case, but look to the pleadings and any evidence relevant to the jurisdictional inquiry. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554–55; *Chicas v. Tex. Mut. Ins. Co.*, 522 S.W.3d 67, 70 (Tex. App.—Houston [1st Dist.] 2017, *aff'd*, 593 S.W.3d 284 (Tex. 2019). We review statutory construction de novo. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012). Our objective is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of the

legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.*

Section 841.021(d)(2)(B) provides that the TDCJ may not provide notice of the anticipated release date of a person for whom the department has previously provided notice under this section and who has been previously recommended for an assessment unless, after the recommendation for assessment was made, the person's parole or mandatory supervision is revoked based on the failure to adhere to the requirements of sex offender treatment and supervision. Tex. Health & Safety Code Ann. § 841.021(d)(2)(B). The evidence shows Woodworth violated his sex offender treatment and supervision requirements by viewing adult and child pornography and using the Internet to access obscene materials, which would allow the State to provide notice under section 841.021. *See* Tex. Health & Safety Code Ann. § 841.021(a), (d)(2)(B). The record shows that Woodworth admitted he accessed child and adult pornography Internet sites, and the TDCJ Parole Division's Notice of Special Conditions states that Woodworth "shall participate in the Sex Offender Treatment Program to include 1. I shall abide by all mandated condition components as directed by the Board or Pardons and Paroles and 2. I shall abide by additional sex offender condition components to the extent directed in writing by the supervising parole officer[,]" which included not viewing pornography and using the Internet to access obscene material.

8

The record also shows that while Woodworth had a Satisfactory Adjustment to his Sex Offender Treatment Program, he had an Unsatisfactory Adjustment to Prohibition of Internet access for certain sex offenders. Based on this record, we conclude Woodworth failed to show the trial court lacks subject-matter jurisdiction or that the State's lawsuit is barred by Section 841.021(d). *See Wheelabrator Air Pollution Control, Inc.*, 489 S.W.3d at 451; *Mayhew*, 964 S.W.2d at 928; *Delgado*, 2022 WL 5237397, at \*2; *see also* Tex. Health & Safety Code Ann. § 841.021(d). Accordingly, we further conclude the trial court did not err by denying Woodworth's pretrial motion. We overrule issue one.

In issue two, Woodworth argues that the Texas Supreme Court's opinion in *Stoddard* causes Chapter 841 to be facially unconstitutional because it permits the civil commitment of inmates on too low a standard. *See* 619 S.W.3d at 675. The United States Supreme Court allows involuntary civil commitments following the conclusion of prison terms when the confinement occurs under proper procedures and evidentiary standards, there is a finding of dangerousness to oneself or others, and proof of dangerousness is coupled with proof of some additional factor like mental illness or mental abnormality. *Kansas v. Crane*, 534 U.S. 407, 409–10 (2002); *see also Kansas v. Hendricks*, 521 U.S. 346, 357–58 (Tex. 1997). Woodworth contends that the *Stoddard* decision could be read as deciding that the definition of "behavioral abnormality" simply means some likelihood of offending

9

which eliminates the separate factors of behavioral abnormality and dangerousness into one and impermissibly allows civil commitment based on a mere finding that the offender is "likely to reoffend." Woodworth argues that the Texas Supreme Court improperly conflated the two elements when it held that the terms "condition" and "predisposition" in the definition of "behavioral abnormality" mean the same thing and that "the import of predisposition and likelihood is exactly the same: increased risk[.]" *In re Commitment of Bohannon*, 388 S.W.3d at 302–03.

Based on our review of the record, Woodworth did not present this argument to the trial court. *See* Tex. R. App. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *see also Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *but see In re Ginsberg*, 630 S.W.3d 1, 11 (Tex. Spec. Ct. Rev. 2018) (stating that courts can address constitutionality sua sponte in exceptional cases). Regardless, Woodworth does not argue that the wording of Chapter 841 as adopted is unconstitutional. The Texas definition of behavioral abnormality does not eliminate one of the Supreme Court's elements but incorporates both. *See* Tex. Health & Safety Code Ann. § 841.002(2) (defining "behavioral abnormality"). To support a civil commitment under Chapter 841, the factfinder must find that the person has a "congenital or acquired condition that by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. In

*Stoddard*, the Texas Supreme Court noted that to find the mental condition requisite to satisfy the statute, one must also find a likelihood of dangerousness to others. 619 S.W.3d at 678. The Texas Supreme Court's opinions have not permitted Texas courts to civilly commit anyone without proof of mental abnormality plus dangerousness, and the Texas Supreme Court, through its opinions, has not interpreted Chapter 841 into unconstitutionality as Woodworth argues. *See In re Commitment of Solis*, No. 03-21-00373-CV, 2022 WL 3903132, at *6 (Tex. App.—Austin Aug. 31, 2022, no pet.) (mem. op.). We overrule issue two. Having overruled both of Woodworth's issues, we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on October 19, 2022
Opinion Delivered December 8, 2022

Before Golemon, C.J., Kreger and Horton, JJ.