**Opinion issued July 11, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00800-CR**

———————————

**DAMIEN THADDEUS JONES, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 5**
**Harris County, Texas**
**Trial Court Case No. 2337303**

---

**MEMORANDUM OPINION**

Former state representative Gina Calanni received an anonymous text message on December 2, 2019. The message stated, "Republican party knows about your sexual relationship with a staffer. There are details and evidence. I'd suggest you resign soon or it will make the news. Your choice." Calanni contacted the

authorities and Damien Thaddeus Jones was subsequently indicted and convicted under the "coercion of a public servant statute"—section 36.03(a)(1) of the Texas Penal Code as incorporating section 1.07(a)(9)(D) of the Code.[1]

In this appeal, Jones challenges his conviction in two issues. First, Jones contends that section 36.03(a)(1), as it incorporates section 1.07(a)(9)(D), is unconstitutional as facially overbroad.[2] Second, Jones claims that his conviction is supported by legally and factually insufficient evidence.

We affirm.

---

[1] Prior to trial, Jones sought a pretrial application for writ of habeas corpus in which he argued that the "coercion of a public servant statute" was facially overbroad. The appellate record contains no express ruling on the habeas application. But the trial court proceeded to trial and Jones was ultimately convicted under that statute. Accordingly, the record reflects that Jones's habeas application was overruled implicitly and his facial overbroad challenge is thus properly before us. *See* TEX. R. APP. P. 33.1(a)(2)(A).

[2] Jones also appears to assert that these Penal Code provisions taken together are unconstitutional as applied to him. However, Jones has provided us with no substantive argument and no supporting authority to "show that, in its operation, the statute is unconstitutional as to him in his situation"—just conclusory assertions. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011). As a result, any as-applied challenge is not properly before us. *See* TEX. R. APP. P. 38.1(i); *see also Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at *40 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived complaint for inadequate briefing); *see also Nelson v. State*, No. 01-17-00746-CR, 2018 WL 6495171, at *8 n.7 (Tex. App.—Houston [1st Dist.] Dec. 11, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that appellants waived their constitutional challenge to section of the Penal Code where they cited no supporting authority and provided no analysis).

## Background

Gina Calanni was a former state representative who was first elected in 2018. When she ran for re-election in 2020, she was unopposed in the Democratic primary. On December 2, 2019, seven days before the deadline to apply for re-election, Calanni received an anonymous text message, indicating that her purported sexual relationship with a staffer could be exposed and suggesting that she resign.

Upon receiving the message, Calanni testified that "I was scared 'cause I didn't know who it was, or, you know, what was the next threat that was going to come, and I was worried about my boys." Calanni was also worried about her safety and her career because voters might not vote for her regardless of the message's truth. She said that voters "would lose faith in me as their public official . . . who's doing inappropriate things." Calanni was afraid her sons might have seen the message and caused them fear. "I thought it was a threat."

After Calanni received the text message, she notified her chief of staff and Texas Department of Public Safety ("DPS") officers, who met with her and showed her pictures of suspects. Calanni recognized Jones and knew that he used to work for another politician. Calanni also testified that Jones was not a public official or a member of any government body at the time.

Robert Mayton, a special agent in the Criminal Investigations Division of the DPS, testified that he investigated the anonymous text message sent to Calanni.

3

Mayton testified that in speaking with Calanni, she felt upset, threatened, that her livelihood and political future were at stake, and that the allegations in the message were untrue.

Mayton learned that the text message was received from a phone number registered to Ad Hoc Labs, the developer of a cell phone application called Burner. Mayton further testified that the underlying cell phone number for the text message was traced to Jones. During his investigation, Mayton called that number and left a message. Jones later returned the call.

Mayton obtained a driver's license photo of Jones and showed it to Calanni, who recognized him. Mayton then determined that Jones worked as a podcaster and political strategist. When police later detained Jones during a traffic stop, Mayton arrived on scene. He dialed the cell number in question and saw his phone number appear on Jones's cell phone. Mayton testified that he then confiscated Jones's cell phone. Jones did not indicate that his cell phone had been lost or stolen, had been out of his possession, or was hacked in the previous two months.

Mayton gave Jones's cell phone to the Harris County District Attorney's Office. Mayton also obtained records from T-Mobile covering a 10-day period between November 29, 2019 and December 9, 2019. Those records confirmed that Jones owned the cell phone since October 3, 2013 and confirmed his cell phone number.

Matthew Gray, a digital forensics investigator with the Harris County District Attorney's office, testified that the data from Jones's phone had been extracted, which was included as a report and admitted as an exhibit. Gray testified that according to the report, Burner had been installed on Jones's phone after the application was purchased on February 24, 2019.

The State showed Gray the text message sent to Calanni at 7:49 p.m. on December 2, 2019. Gray explained that with an Apple device, if a user enters a phone number, an authentication process determines whether the receiver of the message is also using an Apple device and it saves the authentication process in the device. Gray confirmed that Jones's phone had performed an authentication process on December 2, 2019 at 7:44 p.m.—just minutes before the text message in question was sent to Calanni. However, the actual text message sent from Jones's phone to Calanni was no longer available. And the digital forensics report could not identify who was using the phone at the time or who actually sent any messages.

After the State rested, Jones asserted that even if it is proven that he sent the text message, it is "the definition of protected First Amendment speech," protected by the *NAACP* case[3] and that even assuming it is a threat, "that threat is allowed under the law" because "there's no threat of violence" and "no threat of harm."

---

[3]     *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

5

Jones moved for a directed verdict and further argued that he is allowed to threaten. The trial court denied Jones's request for a directed verdict.[4]

The jury convicted Jones under the "coercion of a public servant statute"—section 36.03(a)(1) of the Texas Penal Code as incorporating section 1.07(a)(9)(D) of the Code. The trial court then sentenced Jones to one year in county jail, suspended the sentence, and placed him on community supervision. Jones filed a motion for new trial, arguing that the charge of coercion of a public servant violated his First Amendment right to free speech and that the evidence was insufficient to establish him as the sender of the text message as a matter of law.

## Facial Overbreadth Challenge

In his first issue, Jones argues that the "coercion of a public servant statute"— section 36.03(a)(1) of the Texas Penal Code, as it incorporates the definition of "coercion" in section 1.07(a)(9)(D) of the Penal Code—is unconstitutionally overbroad in violation of the First Amendment to the United States Constitution.

---

[4] At the jury charge hearing, Jones re-urged his directed verdict invoking the First Amendment. Jones argued that if he sent the text message, it was protected speech under *NAACP*, "[t]hat you're allowed to use coercion, you're allowed to use embarrassment, and even up to harassment to a degree." The trial court again denied Jones's request for directed verdict.

**Standard of Review and Legal Principles**

The Free Speech Clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. It applies to the States by virtue of the Due Process Clause of the Fourteenth Amendment. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996).

Under the First Amendment's "overbreadth doctrine," a statute may be declared unconstitutional on its face, even if it might have some legitimate applications. *Ex parte Nuncio*, 662 S.W.3d 903, 917–18 (Tex. Crim. App. 2022) (citing *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016)). The person challenging a statute "must demonstrate from the text [of the law] and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." *Nuncio*, 662 S.W.3d at 920 (citing *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988)).

It must be shown that the statute covers a substantial amount of protected speech, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *See Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003). The danger the statute will be applied unconstitutionally must be realistic and not based on some "fanciful hypotheticals." *Nuncio*, 662 S.W.3d at 918 (citing *Perry*, 483 S.W.3d at 902). This type of constitutional defect causes the statute—or its applicable portion—to be invalidated altogether. *See Ex parte Perry*, 471 S.W.3d 63, 89 (Tex.

7

App.—Austin 2015), *aff'd in part, rev'd in part on other grounds*, 483 S.W.3d at 902.

When presented with a challenge to the constitutionality of a statute, we must presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily in enacting it. TEX. GOV'T CODE § 311.021; *see Allen v. State*, 570 S.W.3d 795, 802 (Tex. App.—Houston [1st Dist.] 2018), *aff'd*, 614 S.W.3d 736 (Tex. Crim. App. 2019). The question of whether a criminal statute is facially overbroad under the First Amendment is reviewed by an appellate court de novo. *See Allen*, 570 S.W.3d at 802. "An overbreadth challenge does not involve the strict scrutiny standard." *Nuncio*, 662 S.W.3d at 920.

Here, the State does not dispute that section 36.03(a)(1), as it incorporates section 1.07(a)(9)(D), implicates the First Amendment. Indeed, the State asks this Court to hold that the statute is valid under the First Amendment. Accordingly, we turn to the first step of the overbreadth analysis—construing the literal text of section 36.03(a)(1), as it incorporates section 1.07(a)(9)(D), to ascertain its scope and breadth. *See Nuncio*, 662 S.W.3d at 918; *Perry*, 483 S.W.3d at 902.

**Step One—Construing the Statute**

In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended. *See Perry*, 483 S.W.3d at 902. In

determining plain meaning, we consult dictionary definitions, rules of grammar and usage, and consider words in context. *Id.* We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.* at 902–03; *see* TEX. GOV'T CODE § 311.011(a).

When the meaning of statutory language is not plain or leads to absurd results, we may consider extratextual factors including: (1) the object sought to be attained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) administrative construction of the statute; and (7) the title (caption), preamble, and any emergency provision. *Perry*, 483 S.W.3d at 903.

Texas courts should, if possible, employ a reasonable, narrowing construction to avoid a constitutional violation—but only if the statute is readily susceptible to such a construction. *Id.* Additionally, a court may cure an overbreadth problem by severing a portion of the statute. *Id.* However, severance is not feasible if the valid and invalid statutory provisions at issue are inextricably intertwined so that a severance would render the statute incomplete or contrary to the legislative intent. *Id.*

Section 36.03(a)(1) of the Texas Penal Code was enacted by the legislature in 1973 and amended in 1989 and 1993.[5] It provides in relevant part:

> (a)    A person commits an offense if by means of *coercion* he:
>
> > (1)    influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty.

TEX. PENAL CODE § 36.03(a)(1) (Emphasis added).[6]

The word "coercion" in the statute is not defined. It is, however, defined in the general definitions provision of the Penal Code, section 1.07(a)(9). *See id.* § 1.07(a)(9). That provision gives "coercion" several meanings in six subsections. *Id.* § 1.07(a)(9)(A)–(F). Jones takes issue with the meaning of "coercion" in only

---

[5]    *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 944 (amended 1989, 1993) (current version at TEX. PENAL CODE § 36.03); Act of April 27, 1989, 71st Leg., R.S., ch. 67, §§ 1, 2, 1989 Tex. Gen. Laws 380, 380 (current versions at TEX. PENAL CODE §§ 1.07(a)(9), 36.03(c)); Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3588, 3659 (current version at TEX. PENAL CODE §§ 1.07(a)(9), 36.03).

[6]    Section 36.03(a)(1) contains an exception to culpability "when the person attempting to influence the public servant is himself a member of the governing body of a governmental entity and is engaged in an official action." TEX. PENAL CODE § 36.03(c). Jones did not dispute that he was not a member of a governing body of a governmental entity at the time this text message was sent. As a result, this exception is not part of this appeal.

subsection (D)—"a *threat*, however communicated to expose a person to hatred, contempt, or ridicule."[7] *See id.* § 1.07(a)(9)(D) (Emphasis added).

Taken together, section 36.03(a)(1), as incorporating section 1.07(a)(9)(D), provides:

> A person commits an offense if by means of coercion—a *threat*, however communicated, to expose a person to hatred, contempt, or ridicule—he influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty.[8]

The word "threat" is not defined in the Penal Code. But we must ascertain its meaning in order to determine the statute's constitutional scope and breadth. Jones does not contend that "threat" has any particular meaning. Instead, he broadly asserts that most threats enjoy "broad protection" under the First Amendment and that the face of this statute impermissibly criminalizes "*any* threat."

The State, on the other hand, maintains that "threat," as used in this statute, should be understood to mean an "extortionate threat." According to the State,

---

[7]  The State indicted Jones for coercion of a public servant by "unlawfully, intentionally and knowingly attempt to influence Gina Calanni, a public servant, in a specific exercise of her official power or a specific performance of her official duty, namely to resign from public office, by means of coercion, namely by threatening to expose Gina Calanni to hatred, contempt, or ridicule."

[8]  *See* TEX. PENAL CODE §§ 1.07(a)(9)(D), 36.03(a)(1) (Emphasis added).

because extortionate speech is unprotected by the First Amendment, much like true threats, section 36.03(a)(1), as incorporating section 1.07(a)(9)(D), cannot be facially overbroad because it prohibits only unprotected speech.[9]

Stated differently, the State does not actually propose a suggested definition of "threat," but, rather, asks this Court to add the word "extortionate" to the statute to modify "threat." This we cannot do. Adding words to a statute is a legislative function, not a judicial function. *See* TEX. CONST. art. II, § 1. It is the legislature's prerogative to enact and amend statutes. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011). And it is the judiciary's responsibility to interpret and apply those statutes according to the plain language used by the legislature. *See id*. We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017) (citing *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).

---

[9]     "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The State cites to several federal cases that generally involve uses of force and require obtaining property. *See United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975); *United States v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972); *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012). But none of the parties here have contended that section 36.03(a)(1) in conjunction with section 1.07(a)(9)(D) implicates the use of force or constitutes a "true threat" under First Amendment jurisprudence.

12

Based on these settled principles, we must presume that the legislature purposely chose not to include "extortionate" in the statutory definition of "coercion" to limit the meaning of "threat." Accordingly, we decline the State's invitation to judicially amend this statute by adding a word not included by the legislature. *See Herron v. State*, 625 S.W.3d 144, 153 (Tex. Crim. App. 2021) ("It is not for courts to add or subtract [language] from such a statute."). We thus necessarily reject the State's position that section 36.03(a)(1), as incorporating section 1.07(a)(9)(D), prohibits only unprotected extortionate speech.

Yet, we still must ascertain the meaning of "threat." On this front, the Texas Court of Criminal Appeals' decision in *Perry* provides important guidance. *Perry*, 483 S.W.3d at 904–06.

In *Perry*, the court was confronted with an overbreadth challenge to the same "coercion of a public servant statute." And, like here, the court in *Perry* had to ascertain the meaning of "threat" as used in the statutory definition of "coercion."[10] *Id*. at 904–05. The State argued in *Perry*, similar to here, for a narrow meaning of "threat" that would only proscribe unprotected speech. *Id*.

The court of criminal appeals rejected the State's interpretation as "misguided." *Id*. at 905. It looked instead to dictionaries, grammatical

_____

[10]    A different subsection of the statutory definition of "coercion" was at issue in *Perry*, subsection (F) rather than (D) but all six subsections of section 1.07(a)(9) share the same undefined term "threat." TEX. PENAL CODE § 1.07(a)(9)(A)–(F).

13

considerations, and rules of statutory construction in concluding that "threat," as used in section 1.07(a)(9) and incorporated into section 36.03(a)(1), should be broadly construed to mean—"'[a]n expression of an intention to inflict something harmful'" or "'[a] declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course.'" *Id.* at 905–06 (quoting *Threat*, WEBSTER'S II NEW COLLEGE DICTIONARY (1999); *Threat*, RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2nd ed. [unabridged] 1987)); *see* TEX. GOV'T CODE § 311.011(a). "[W]e are not free to arbitrarily carve out a different meaning simply to avoid First Amendment complications arising from its application to the statute before us." *Perry*, 483 S.W.3d at 906.

As an intermediate Texas appellate court, we are bound to apply this meaning of "threat" as articulated by the Texas Court of Criminal Appeals. *See Bradshaw v. State*, No. 01-19-00611-CR, 2020 WL 7062589, at *3 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op., not designated for publication). When we do so, section 36.03(a)(1), as incorporating section 1.07(a)(9)(D), provides as follows:

> A person commits an offense if by means of coercion—an expression of an intention to inflict something harmful or a declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course, however communicated, to expose a person to hatred, contempt, or ridicule—he influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts

14

to influence a public servant to violate the public servant's known legal duty.

Our overbreadth analysis is therefore confined to this proscribed offense.

**Step Two—Jones's Burden to Show Facial Overbreadth**

In the next step of the overbreadth analysis, we must determine whether Jones met his burden to show that a substantial number of instances exist in which section 36.03(a)(1), as incorporating section 1.07(a)(9)(D), cannot be applied constitutionally within the ambit of the First Amendment. *Nuncio*, 662 S.W.3d at 920 (citing *New York State Club Ass'n*, 487 U.S. at 14). Jones must demonstrate, and not based on some "fanciful hypotheticals," that the statute covers a substantial amount of protected speech, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *Id.*

In that regard, Jones asserts that the statute is overbroad because it "criminalize[s] a breathtaking amount of constitutionally protected speech" and "would render many common scenarios in political discourse criminal." Jones provides the following eight hypotheticals to show overbreadth:

(1) "[P]ro-choice protesters cannot embarrass a state representative if they vote to restrict abortion rights;"

(2) "A citizen cannot hold signs outside a Justice's house to show their disdain for a particular ruling;"

(3) "A non-profit, like project veritas, cannot post videos that hold elected officials in contempt for failing to act;"

15

(4) "Online influencers could not ridicule Governor Abbott on his handling of electrical power grid;"

(5) "A local blogger, who investigates local campaign filings could not ridicule the expenditure of funds by candidates because it might embarrass the official;"

(6) "Political commentators could not demand the resignation of the governor for considering signing an anti-abortion bill;"

(7) "Citizens could not threaten to release audio tapes of a Presidential candidate to drop out of the race if he was caught on a 'hot mic' saying" inappropriate things; and

(8) "A lawyer could not threaten to release audio tapes of a Chief of Staff of House [of] Representatives bragging about an elected District Attorney charging innocent citizens as a political favor."

The vast majority of these hypotheticals are inapplicable to sections 36.03(a)(1) and 1.07(a)(9)(D). Hypotheticals 2 through 6 and 8 do not involve a communication to influence, or attempt to influence, a public servant in the "specific exercise of his official power" or "specific performance of his official duty" or to violate a "known legal duty." *See* TEX. PENAL CODE § 36.03(a)(1). Instead, they all concern communications and expressions made in reaction to, rather than to influence or to attempt to influence, the exercise of "official power" or "official duty" by a public servant. And hypothetical 7, running for office, does not involve an "official power," "official duty," or "legal duty" of a public servant.

As a result, Jones's hypotheticals 2 through 8 are insufficient to satisfy his burden under the overbreadth doctrine of showing that the "coercion of a public

16

servant statute" prohibits a substantial amount of protected expression. Rather, they are merely "fanciful hypotheticals." *See Perry*, 483 S.W.3d at 902.

Jones's hypothetical 1 arguably could implicate section 36.03(a)(1) as incorporating section 1.07(a)(9)(D). But it alone fails to satisfy Jones's burden under the overbreadth doctrine. A *single* purported instance does not demonstrate that the amount of protected speech affected by a statute is *substantial*. *See Nuncio*, 662 S.W.3d at 920. Stated differently, a single purported instance is not substantial. This follows the directive that "[a]pplication of the overbreadth doctrine is 'manifestly strong medicine' to be employed 'sparingly and only as a last resort.'" *Id*. (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Accordingly, for all of these reasons, we conclude that Jones has failed to meet his burden under the overbreadth doctrine of showing that there is a realistic danger that Texas Penal Code section 36.03(a)(1), as it incorporates Texas Penal Code section 1.07(a)(9)(D), will be unconstitutionally applied in a substantial number of instances beyond its legitimate sweep. We therefore cannot, and will not, hold that section 36.03 in conjunction with section 1.07(a)(9)(D) is facially and unconstitutionally overbroad.

We overrule Jones's first issue.

## Sufficiency of the Evidence

In his second issue, Jones argues that the evidence is legally and factually insufficient to support his conviction under the "coercion of a public servant statute" for two reasons. First, Jones asserts that the evidence of an alleged threat is insufficient to convict him because "the sender simply informed Ms. Calanni of what the Republican party was planning on doing" and that the message transmitted "is normally considered a heads up and not worthy of an investigation." Essentially, Jones argues that the text message sent was not a "true threat."[11] *See Black*, 538 U.S. at 359 ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). And second, Jones asserts that there is insufficient evidence to show that he sent the text message in question.

### Standard of Review

We determine whether the evidence is sufficient by considering all the evidence, in the light most favorable to the jury's verdict, to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We defer to the factfinder

---

[11] Oddly, Jones's sufficiency argument is strikingly similar to the State's position, that we rejected under the overbreadth analysis, that "threat" should be understood to be an "extortionate threat."

18

to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, and we consider only whether the factfinder reached a rational decision. *See Malbrough v. State*, 612 S.W.3d 537, 559 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd); *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (reviewing court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally").

Sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009). We must consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Malbrough*, 612 S.W.3d at 559 (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Circumstantial and direct evidence are equally probative in establishing the defendant's guilt, and circumstantial evidence alone can be sufficient. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The State need not disprove all reasonable alternative hypotheses inconsistent with a defendant's guilt for the evidence to be sufficient. *Wise*, 364 S.W.3d at 903. An appellate court "considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when

19

considered in the light most favorable to the verdict." *Id.* We review factual and legal sufficiency under the same standard of review. *See Edwards v. State*, 497 S.W.3d 147, 156 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

We now address each of Jones's sufficiency challenges in turn.

**Actual Threat**

As discussed earlier, section 1.07(a)(9)(D) defines "coercion" as "a threat, however communicated, to expose a person to hatred, contempt, or ridicule." *See* TEX. PENAL CODE § 1.07(a)(9)(D). And "threat" in the context of this statutory definition means "'[a]n expression of an intention to inflict something harmful'" or "'[a] declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course.'" *Perry*, 483 S.W.3d at 905–06.

Accordingly, section 36.03(a)(1) as it incorporates section 1.07(a)(9)(D) does not require a "true threat." Any expression of an intention to inflict something harmful or any declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course to expose a person to hatred, contempt, or ridicule suffices under the statute—as long as that "coercion" was meant to influence or attempt to influence Calanni in a specific exercise of her official power or a specific performance of her official duty. *See* TEX. PENAL CODE §§ 1.07(a)(9)(D), 36.03(a)(1).

20

Here, the jury heard and saw the text message that stated, "Republican party knows about your sexual relationship with a staffer. There are details and evidence. I'd suggest you resign soon or it will make the news. Your choice." The jury also heard Calanni's testimony that she was worried about her safety and her career because voters might not want to vote for her regardless of whether the message was true. She also testified that voters "would lose faith in me as their public official . . . who's doing inappropriate things." When asked if the message could have been a warning, Calanni responded, "I thought it was a threat." She further testified that she thought her reputation amongst state representatives and the public would look bad because they did not know whether the message was true.

Whether Jones used "coercion" i.e. a threat, against Calanni is an essential element of the offense of coercion of a public servant and was a question for the jury. *See* TEX. CODE CRIM. PROC. art. 36.13 (jury is judge of facts); *Williams*, 235 S.W.3d at 750 ("[T]he responsibility of the trier of fact [is] to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Without objection, the word "threat" was not defined in the jury charge. The Texas Government Code provides that undefined terms shall be "construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011. Jurors may "freely read [undefined] statutory language to have

21

any meaning which is acceptable in common parlance." *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012).

Here, the jury could use its own common sense and usage in determining that Jones's text message—declaring Calanni's alleged sexual relationship and that it would be shared with the media unless Calanni resigned—was a "threat" as that word is commonly understood and defined by standard dictionaries. These were the same sources that the Texas Court of Criminal Appeals looked to in defining "threat" for this statute. *See Perry*, 483 S.W.3d at 905–06. Consequently, based on the contents of the text message and Calanni's testimony, we conclude that the State presented sufficient evidence of a "threat" to support Jones's conviction under the "coercion of a public servant statute." *See* TEX. PENAL CODE §§ 1.07(a)(9)(D), 36.03(a)(1).

**Identity of the Sender**

Next, the jury heard evidence that Mayton traced the message sent to Calanni to the Burner application. The number from the Burner application was subsequently traced to Jones's cell phone, and Mayton called Jones's phone in front of Jones and saw Mayton's number on Jones's caller id. Gray testified that a subsequent data extraction from Jones's phone showed that Jones had downloaded Burner, that Calanni's number had been entered into Jones's phone, and that Jones

had been using the phone in the days before and after the text message was sent to Calanni.

Mayton also testified that at no time did Jones claim that anyone else had been using his phone or that it had been lost or stolen. From this circumstantial evidence, the jury could have rationally concluded that Jones sent the text message in question to Calanni. *See Butler v. State*, 459 S.W.3d 595, 602 (Tex. Crim. App. 2015) (holding that phone number or other identifying information, along with corroborating witness testimony, may "bridge the logical gap" and permit a proper inference that the purported author of an electronic communication actually sent the message). Consequently, we conclude that the State presented sufficient evidence for the jury to reasonably believe that Jones sent the text message to Calanni.

We overrule Jones's second issue.

## Conclusion

For all of the reasons above, we affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. *See* TEX. R. APP. P. 47.2(b).

23